

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-28-1995

# LaBelle Processing Company v. Swarrow

Precedential or Non-Precedential:

Docket 95-3116

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"LaBelle Processing Company v. Swarrow" (1995). *1995 Decisions.* Paper 297.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/297

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 95-3116

----------

LABELLE PROCESSING COMPANY,

Petitioner

v.

JOHN SWARROW

and

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,

Respondents

----------

On Petition for Review of the Final Decision
of the Benefits Review Board
(No. 93-1491 BLA)

----------

Argued Tuesday, October 24, 1995

BEFORE: SLOVITER, Chief Judge,
COWEN and GARTH, Circuit Judges

----------

(Opinion filed November 28, 1995)

----------

Mark E. Solomons (Argued)
Laura Metcoff Klaus
Arter & Hadden
1801 K Street, N.W.
Suite 400K
Washington, DC 20006

<u>Attorney for Petitioner</u>

Jean Zeiler  (Argued)
United Mine Workers District 5
RD 1, Box 172
Belle Vernon, PA 15012

Attorney for Respondent Swarrow

Thomas S. Williamson, Jr.
Donald S. Shire
Christian P. Barber
Dorothy L. Page (Argued)
United States Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Washington, DC 20210

Attorney for Respondent Director,
Office of Workers' Compensation
                        Programs,
United States Department
of Labor

----------

OPINION OF THE COURT

----------

GARTH, Circuit Judge:

Petitioner Labelle Processing Company ("Labelle") appeals an adverse decision of the Benefits Review Board ("BRB") of the United States Department of Labor ("DOL").  The BRB affirmed the decision of an administrative law judge ("ALJ") awarding black-lung benefits to John Swarrow, a former employee of Labelle.  The BRB had jurisdiction to review the final decision of the ALJ pursuant to 33 U.S.C. § 921(b)(3), as incorporated into the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 901 et seq., by 30 U.S.C. § 932(a).  We have jurisdiction over the BRB's final order

3

pursuant to 33 U.S.C. § 921(c), as incorporated by 30 U.S.C. § 932(a).

Labelle advances alternative arguments for reversal: (1) the ALJ's determination that Labelle's former employee was entitled to benefits under the BLBA violated principles of res judicata; and (2) the ALJ applied the wrong standard in finding that the employee had established "a material change in conditions," a necessary prerequisite to the filing of a duplicate claim under the BLBA. We hold that res judicata is inapplicable in the present context, but we agree that the ALJ did not apply the correct standard. We will therefore vacate the award of benefits and remand for further proceedings consistent with this opinion.

I.

John Swarrow, Jr., the claimant-respondent, worked as a coal miner for over thirty-four years, retiring in June 1985, at the age of sixty-three. Swarrow worked for Labelle from May 1976 to June 1985. In his last position, as a barge loader, he worked in a small, very dusty control room, operating the controls to load coal from the preparation plant onto a barge. Other than when he was employed as a barge loader (a position that he held for three or four years), Swarrow worked in underground mines until he retired.

Swarrow testified that he retired because of respiratory problems, including chronic wheezing and difficulty climbing ninety-four stair-steps and a thirteen-step ladder to reach his

4

work station.  Swarrow also testified that he had smoked one pack of cigarettes every three to four days for about forty years but stopped smoking upon retirement.  Swarrow uses a Proventil[0] inhaler and also takes other medication for his breathing problems.

On September 16, 1985, Swarrow filed a claim for benefits under the Black Lung Benefits Act of 1977, 30 U.S.C. § 901 et seq.  The District Director denied Swarrow's claim on February 21, 1986, informing Swarrow that he had a right to submit additional medical evidence or request a hearing before an ALJ.  Swarrow subsequently obtained counsel and submitted additional medical evidence in support of his claim.  Labelle also submitted medical evidence.  After considering the new evidence, the District Director reaffirmed the denial of Swarrow's claim on May 28, 1986.

Swarrow submitted the following medical evidence in support of his claim:  chest x-rays; six pulmonary function tests; and three blood gas studies.  The results from the pulmonary function tests (PFTs) and the blood gas studies, standing alone, did not establish total disability.[0]

---

[0]Proventil is the brand name for albuterol, a beta-adrenergic bronchodilator, typically administered in the form of an inhalation aerosol.  See Physicians' Desk Reference 2280-83 (49th ed. 1995).

[0]A "qualifying" pulmonary function study or blood gas study yields values that are equal to or less than the values set out in the tables at Part 718, Appendices B and C.  See 20 C.F.R. § 718.204(c)(1), (c)(2).  In the absence of contrary probative evidence, "qualifying" test results (i.e. equal to or less than the table values) from pulmonary function or blood gas studies conclusively establish "total disability" within the meaning of

5

Swarrow also submitted physicians' readings of the chest x-rays.  Two doctors, one of whom was a "B reader,"[0] found that the x-rays showed the presence of pneumoconiosis.  Four other doctors, three of whom were "B readers," determined that the x-rays were negative for pneumoconiosis.

In addition, Swarrow submitted the evaluations of several physicians who had examined him.  Dr. George Riegel, at the request of the DOL, examined Swarrow on November 26, 1985 and determined that Swarrow did not suffer from coal workers' pneumoconiosis.  In a report dated February 28, 1986, Dr. Thomas Morgan, Swarrow's treating physician since May 18, 1983, diagnosed chronic obstructive pulmonary disease (i.e. pneumoconiosis) and concluded that Swarrow was totally disabled due to exposure to coal dust.  Dr. Peter Kaplan examined Swarrow on March 21, 1986 and found no evidence of pneumoconiosis, opining that Swarrow was capable of performing the duties of his last job.

On May 18, 1987, Swarrow, through counsel, attempted to submit additional evidence.[0]  The DOL, however, returned the

_____

the regulations.  See Director, OWCP v. Siwiec, 894 F.2d 635, 636 (3d Cir. 1990)

[0]A "B reader" is a physician, often a radiologist, who has demonstrated proficiency in reading x-rays for pneumoconiosis by passing annually an examination established by the National Institute of Safety and Health and administered by the U.S. Department of Health and Human Services.  See 20 C.F.R. § 718.202(a)(ii)(E); 42 C.F.R. § 37.51.  Courts generally give greater weight to x-ray readings performed by "B readers."  See Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 145 n.16 (1987); Old Ben Coal Co. v. Battram, 7 F.3d 1273, 1276 n.2 (7th Cir. 1993).

[0]Swarrow attempted to submit medical evaluations performed by Dr. J.D. Silverman and Dr. Warfield Garson.  Dr. Silverman examined Swarrow on April 3, 1987, diagnosing anthracosilicosis and

6

material, advising Swarrow that the new evidence was untimely and therefore would not be considered. Specifically, the DOL wrote, in a letter, that the evidence should have been submitted within one year from the initial decision denying Swarrow's claim, that is, one year prior to February 21, 1987.

On October 2, 1989, Swarrow filed a second application, or "duplicate claim," for black-lung benefits. In support of his new application for benefits, Swarrow resubmitted the medical evidence he had previously submitted or attempted to submit in connection with his original claim. This evidence included the reports by Drs. Garson and Silverman, which had been rejected as untimely by the DOL and accordingly had not been considered by the DOL in its review of Swarrow's original application.

Swarrow also submitted new medical evidence, including chest x-rays, PFTs, and blood gas studies. The PFTs and blood gas studies did not demonstrate, under the standards set forth in the federal regulations, a totally disabling respiratory impairment.

Additional medical reports by Drs. Fino and Kaplan were also submitted. Both physicians concluded that Swarrow did not suffer from pneumoconiosis.[0] Another physician, Dr. Cander, based upon

---

obesity. Dr. Silverman stated that Swarrow was totally disabled due to anthracosilicosis caused by exposure to coal dust, and further opined that Swarrow would be disabled even if he lost weight.
     Dr. Garson examined Swarrow on June 2, 1986, diagnosing coal workers' pneumoconiosis, arteriosclerosis, arthritis and obesity. Dr. Garson concluded that Swarrow was totally disabled as a result of a combination of his medical problems.
[0]Dr. Gregory J. Fino examined Swarrow on October 21, 1987, and diagnosed bronchial asthma, asthmatic bronchitis, hypertension and a stomach ulcer. Dr. Fino also opined that Swarrow's asthma was unrelated to coal dust exposure.

7

his review of Swarrow's medical records, initially diagnosed Swarrow as totally disabled due to pneumoconiosis but later recanted, stating that "the presence of disabling pneumoconiosis has not been established by the information available."[0]  In addition to Drs. Morgan (Swarrow's treating physician), Garson and Silverman, two other examining physicians, Drs. Cho and Levine, concluded that Swarrow suffered from disabling pneumoconiosis.[0]

Finding that Swarrow had not proven "a material change in conditions,"[0] the District Director denied Swarrow's duplicate claim in an order dated February 27, 1990.  On March 6, 1990,

---

[0] Dr. Peter Kaplan examined Swarrow on March 21, 1986, June 14, 1990, and December 6, 1991.  On all three occasions, Dr. Kaplan found no evidence of pneumoconiosis and no lung impairment.  When deposed in 1991, however, Dr. Kaplan admitted that he had observed a decrease in Swarrow's lung function since the 1986 tests, but attributed "some" of this decrease to aging and less than maximal effort exerted by Swarrow in performing the test.

[0] Dr. Leon Cander, who did not actually examine Swarrow, reviewed Swarrow's medical records upon request of the Office of Workers' Compensation (OWCP).  After Dr. Cander reported that the records indicated disabling pneumoconiosis, the OWCP, on February 2, 1990, forwarded a "revised" file to Dr. Cander and asked him to reevaluate his diagnosis.  Upon reconsideration, Dr. Cander submitted a new report on February 12, 1991, withdrawing his earlier diagnosis and instead concluding that the medical evidence did not establish disabling pneumoconiosis.

[0] Dr. Yong Dae Cho examined Swarrow on November 8, 1989, and diagnosed disabling restrictive lung disease with hypoxia caused by coal dust exposure and obesity.

Dr. Macy I. Levine examined Swarrow on May 30, 1989 and November 5, 1991.  On both occasions, Dr. Levine diagnosed pneumoconiosis, chronic bronchitis and obesity.  Dr. Levine found that Swarrow was totally disabled and that the pneumoconiosis had been caused by coal dust exposure.  Significantly, in his 1991 report, Dr. Levine noted that "the pulmonary function test showed progression of [Swarrow's] respiratory impairment . . . ."

[0] DOL regulations allow the filing of "duplicate claims" where "there has been a material change in conditions."  20 C.F.R. §725.309(d).

Swarrow appealed the denial to the BRB.  On December 5, 1990, the BRB remanded Swarrow's claim to the Office of Administrative Law Judges, based upon the Tenth Circuit's ruling in Lukman v. Director, OWCP, 896 F.2d 1248 (1990),[0] for a hearing before an ALJ.

After a hearing, held on April 9, 1992, the ALJ, finding that Swarrow had established "a material change in conditions," issued its decision and order on March 31, 1993.  This order awarded benefits to Swarrow.

Labelle appealed the award to the BRB.  The BRB, on September 15, 1994, affirmed the award and denied Labelle's motion for reconsideration on January 4, 1995.  This appeal by Labelle followed.

## II.

The BLBA provides for the payment of benefits to coal miners "who are totally disabled due to pneumoconiosis [also known as black lung disease]."  Id. at § 901(a); 20 C.F.R. § 725.1(a).  Pneumoconiosis is defined under the BLBA as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment."  30 U.S.C. § 902(b); 20 C.F.R. § 725.101(20).  The "legal" definition

---

[0] Previously, the BRB had held that duplicate claims filed pursuant to section 725.309 must be appealed directly to the BRB rather than to an ALJ.  Lukman v. Director, OWCP, 10 Black Lung Rep. (MB) 1-56 (1987), aff'd on recon., 11 Black Lung Rep. (MB) 1-71 (Ben. Rev. Bd. 1988) (en banc), rev'd, 896 F.2d 1248 (10th Cir. 1990).  Consistent with the Lukman rule, Swarrow had appealed directly to the BRB.  The Tenth Circuit later reversed Lukman, holding that a claimant who filed a duplicate claim had a right to a hearing before an ALJ.  Lukman, 896 F.2d at 1254.

9

of pneumoconiosis (i.e. any lung disease that is significantly related to, or substantially aggravated by, dust exposure in coal mine employment) is much broader than the medical definition, which only encompasses lung diseases caused by fibrotic reaction of lung tissue to inhaled dust. See Doris v. Director, OWCP, 938 F.2d 492, 496 (4th Cir. 1991).

Congress granted the Secretary of Labor broad authority to promulgate regulations under the BLBA. 30 U.S.C. §§ 932(a), 936(a); 20 C.F.R. § 725.301–.422; see also Director, OWCP v. National Mines Corp., 554 F.2d 1267, 1275 (4th Cir. 1977) (holding that validity of regulations will be sustained as long as "'reasonably related to the purposes of the enabling legislation'") (quoting Mourning v. Family Publications Serv., Inc., 411 U.S. 356, 369 (1973)). Congress expressly authorized the Secretary to establish and operate field offices which process claims filed by miners and their survivors. 30 U.S.C. § 901(a).

Part 718 of the black lung regulations sets forth the criteria for evaluating disability claims filed after March 31, 1980, or claims filed before that date but adjudicated after March 31, 1980. See id. at §§ 718.2, 725.4(a). As previously stated, Swarrow filed his claim on September 16, 1985. Under Part 718, to obtain benefits, a claimant must establish that (1) he is totally disabled (2) due to pneumoconiosis, (3) which he contracted as a result of coal mine employment. See id. at § 718.201–.204; see also Director, OWCP v. Mangifest, 826 F.2d 1318, 1320 (3d Cir. 1987).

10

When a claim is filed, the District Director marshals the relevant evidence, schedules medical testing, notifies interested parties, and issues a decision awarding or denying benefits. See generally 20 C.F.R. § 725.401–.418. Any party objecting to the District Director's decision may request reconsideration or a formal hearing before an ALJ. Id. at § 725.419, .421.

If a party requests a formal hearing, an ALJ will conduct a de novo hearing and then issue a decision awarding or denying the claim based upon the evidence presented. Id. at § 725.461(a), .476. Any party dissatisfied with the ALJ's decision and order may, within thirty days of the filing of the order (or the filing of the denial of a request for reconsideration), appeal the decision to the BRB. Id. at § 725.479–.480.

The BRB, a quasi-judicial body composed of five members appointed by the Secretary, is authorized to hear "appeals . . . from decisions or orders with respect to [black lung] claims for compensation or benefits . . . ." Id. at § 801.102(6); see also 33 U.S.C. § 921(b); 20 C.F.R. § 801.101–.201. As an appellate tribunal, the BRB reviews the ALJ's decision based upon the hearing record. See 33 U.S.C. § 921(b)(3), as incorporated by 30 U.S.C. § 932(a). "The [ALJ's] findings of fact . . . shall be conclusive if supported by substantial evidence in the record considered as a whole." Id.

A claimant or employer who is "adversely affected or aggrieved by a final order of the [BRB]" may appeal that order to the United States Court of Appeals for the circuit in which the injury occurred by filing a petition for review within sixty days

11

of the issuance of the BRB order. Id. at § 921(c); 20 C.F.R. § 802.410(a). See also generally Lukman v. Director, OWCP, 896 F.2d 1248, 1252–53 (10th Cir. 1990) (presenting overview of procedure); Kalaris v. Donovan, 697 F.2d 376, 381–83 (D.C. Cir.) (same), cert. denied, 462 U.S. 1119 (1983).

III.

The Benefits Review Board is bound by an ALJ's factual findings "if they are rational, supported by substantial evidence, and consistent with applicable law." Elliot Coal Mining Co. v. Director, OWCP, 17 F.3d 616, 626 (3d Cir . 1994). See also 33 U.S.C. § 921(b)(3), as incorporated by 30 U.S.C. § 932(a); Kowalchick v. Director, OWCP, 893 F.2d 615, 619 (3d Cir. 1990). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kowalchick, 893 F.2d at 620.

We review the Board's decision to determine whether the Board properly deferred to the ALJ's fact findings which were supported by substantial evidence. Hillibush v. Department of Labor, 853 F.2d 197, 202 (3d Cir. 1988); Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 162 (3d Cir. 1986). We exercise plenary review over questions of law. Carozza v. U.S. Steel Corp., 727 F.2d 74 (3d Cir. 1984). We will defer, however, to the Director's reasonable interpretation of the statute and the Department's regulations. Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 696 (1991); Director, OWCP v. Barnes & Tucker Co., 969 F.2d 1524, 1527 (3d Cir. 1992).

12

IV.

Labelle argues that Swarrow's duplicate claim is barred by res judicata principles. Labelle asserts that "[t]he only difference [between Swarrow's duplicate claim and his original claim] was that he got more doctors to say he had pneumoconiosis and he found a sympathetic ALJ." Petitioner's Brief at 26. According to Labelle, the decisions of the BRB and the ALJ below, in essence, "permit unsuccessful claimants to keep filing claims until the right mixture of doctors, lawyers and ALJs produce[] an award of benefits." Id.

Under the doctrine of res judicata or claim preclusion, a subsequent suit based on the same cause of action as a prior suit that involved the same parties or their privies is barred where there has been a final judgment on the merits in the prior suit. Board of Trustees of Trucking Employees v. Centra, 983 F.2d 495, 504 (3d Cir. 1992). Although Swarrow's initial claim resulted in a final judgment and involved the same parties as his present claim, his second claim asserts a new cause of action. Consequently, res judicata does not apply and Swarrow's new claim is not barred.

A claim, even though it is a second claim, in which "a material change in conditions" is asserted and established cannot be barred when it states a new cause of action. Of course, new factual allegations supporting a previously denied claim will not create a new cause of action for the same injury previously adjudicated. See, e.g., Rogerson v. Secretary of Dep't of Health

13

& Human Servs., 872 F.2d 24, 29 (3d Cir. 1989).  In contrast, new facts (i.e. events occurring after the events giving rise to the earlier claim) may give rise to a new claim, which is not precluded by the earlier judgment.  See Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 328 (1955); Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1429-30 (3d Cir. 1994); see also Restatement (Second) of Judgments § 24 cmt. f (1982) ("Material operative facts occurring after the decision of an action with respect to the same subject matter may . . . be made the basis of a second action not precluded by the first.").

The denial of the first claim filed by Swarrow established only that Swarrow was not then totally disabled due to pneumoconiosis.  See Cooley v. Island Creek Coal Co., 845 F.2d 622, 624 (6th Cir. 1988) (noting that issue to be decided is miner's physical condition at the time of the hearing); Klouser v. Hegins Mining Co., 6 Black Lung Rep. (MB) 1-110, 1-115 (Ben. Rev. Bd. 1983) (same).  Although it is true that Swarrow is now precluded from collaterally attacking the prior denial of benefits, Swarrow may file a new claim, asserting that he is now eligible for benefits because he has become totally disabled due to coal miner's pneumoconiosis and that his disability occurred subsequent to the prior adjudication.[0]

---

[0]Of course, the doctrine of collateral estoppel, or issue preclusion, may bar a claimant from relitigating issues decided in a previous action.  For instance, if the ALJ had found that Swarrow had not established that he was a "miner" under the Act, Swarrow may not later relitigate that issue (unless, of course, he subsequently worked as a miner).

14

Labelle contends that because Swarrow did not return to work in a coal mine after the denial of his first claim, he cannot, as a matter of law, establish a new cause of action.  According to Labelle, Swarrow could not contract pneumoconiosis subsequent to the initial denial of benefits without further exposure to coal dust.

Labelle's argument overlooks the fact that pneumoconiosis is a latent dust disease.  See Richard Sloane, The Sloane-Dorland Annotated Medical-Legal Dictionary 558 (1987) ("On any given date pneumoconiosis may not be detectable . . . . The disease, nevertheless, may progress and later destroy sufficient lung tissue [to become detectable].").  A latent condition such as pneumoconiosis may not become manifest until long after exposure to the causative agent (i.e. coal dust).  See The Merck Manual of Diagnosis and Therapy (Robert Berkow & Andrew J. Fletcher, eds., 16th ed. 1992) (explaining that progressive massive fibrosis, a form of pneumoconiosis "may develop after exposure has ceased, or . . . progress without further exposure"); David V. Bates et al., A Longitudinal Study of Pulmonary Function in Coal Miners in Lorraine, France, 8 Am. J. Indus. Med. 21, 21 (1985) (observing continued, accelerated rates of decline in lung function loss after retirement from mining in both smokers and nonsmokers).

Indeed, Congress, in enacting the BLBA, recognized the perniciously progressive nature of the disease.  See Robert L. Ramsey & Robert S. Habermann, The Federal Black Lung Program -- The View from the Top, 87 W. Va. L. Rev. 575, 575 (1985) ("Due to the insidious nature of progressive occupational respiratory

15

disorders such as pneumoconiosis, Congress found that state programs, which were aimed at adjudicating time-definite injuries, often precluded recovery due to the running of statutes of limitations.").  The DOL, the agency with purview over black lung claims, has also noted

> that pneumoconiosis is a progressive disease, and that while the symptoms may, on occasion, subside, the condition itself does not improve. . . .
>
> . . . [T]he Department has stricken the language of proposed § 718.404(a)(1), which required notification of the Office if the respiratory or pulmonary condition of a recipient of benefits improved.  This change is in response to comments and testimony stating that pneumoconiosis does not, in fact, improve. . . .  In order to reflect the fact that the symptoms of pneumoconiosis generally continue, even though statutory entitlement may cease, the Department has changed the title of this section from "cessation of disability" to "cessation of entitlement."  Although the Department agrees that the disease does not improve, section 22 of the [LHWCA] provides for modification of awards on a change in condition or mistake in determination of fact.  Subsection (b) of this regulation effectuates this provision.

45 Fed. Reg. 13,694 (Feb. 29, 1980) (emphasis added).

Moreover, courts have long acknowledged that pneumoconiosis is a progressive and irreversible disease.  See Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 151 (1987); Kowalchick v. Director, OWCP, 893 F.2d 615, 621 (3d Cir. 1990); accord Back v. Director, OWCP, 796 F.2d 169, 172 (6th Cir. 1986); Orange v. Island Creek Coal Co., 786 F.2d 724, 727 (6th Cir. 1986); Consolidation Coal Co. v. Chubb, 741 F.2d 968, 973 (7th Cir. 1984); Andryka v. Rochester & Pittsburgh Coal Co., 14 Black Lung Rep. (MB) 1-34 (1990); Stanley v. Betty B Coal Co., 13 Black Lung

16

Rep. (MB) 1-72 (1990); Belcher v. Beth-Elkhorn Corp., 6 Black Lung Rep. (MB) 1-1180 (1984).

Labelle contends, however, that "simple" pneumoconiosis, in contrast to its "complicated" form, is not a progressive disease, but has submitted no medical evidence to support this assertion. In support of the proposition that "[p]neumoconiosis is progressive only in its advanced or complicated form," Labelle relies entirely on two sources:  Usery v. Turner Elkhorn Mining Co., 428 U.S. 1 (1976); and Report of the Surgeon General, The Health Consequences of Smoking:  Cancer and Chronic Lung Disease in the Workplace (1985) [hereinafter "Surgeon General's Report"].

Usery does not directly support Labelle's contention.  The Usery Court, in providing background information about pneumo-coniosis, merely noted that "the disease is progressive, at least in its complicated stage . . . ." Usery, 428 U.S. at 7-8 (emphasis added).  The inference that Labelle would have us draw (i.e. the disease is not progressive unless in its complicated stage) is not warranted.  The Usery Court merely qualified its observation that pneumoconiosis is a progressive disease; it did not state that "simple" pneumoconiosis cannot progress in the absence of exposure to coal dust.

Similarly, Labelle's reliance on the Surgeon General's Report is misplaced.  The report does state that "[s]imple CWP [coal-workers' pneumoconiosis] does not progress in the absence of further exposure."  Surgeon General's Report, supra at 294. This statement, however, addressed only the progressive nature of clinical pneumoconiosis.

17

Legal pneumoconiosis (i.e. pneumoconiosis within the meaning of the BLBA) is defined more broadly than the medical (clinical) definition of pneumoconiosis.  The legal definition encompasses all "chronic pulmonary disease[s] resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by dust exposure in coal mine employment."  20 C.F. R. § 718.201.  "The definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment."  Id.

Significantly, the Surgeon General's Report discusses chronic bronchitis caused by coal dust exposure but at no point suggests that industrial chronic bronchitis cannot progress in the absence of continuing dust exposure.  See Surgeon General's Report, supra at 183–85, 299–300.  Chronic bronchitis, as a chronic pulmonary disease, falls within the legal definition of pneumoconiosis.

Moreover, even if Labelle had established that "simple" pneumoconiosis could not progress without further dust exposure, it is far from evident that Swarrow necessarily suffered from the simple form of the disease.[0]  Indeed, implicit in the ALJ's

---

[0] Labelle asserts that "complicated" pneumoconiosis can be diagnosed only by x-ray, biopsy or autopsy, citing 30 U.S.C. § 921(c)(3) in support of this contention.  That statutory provision, however, does not address the distinction between "complicated" and "simple" pneumoconiosis.  The statute merely creates an irrebuttable presumption of entitlement to benefits, without proof of disability, where the diagnosis of pneumoconiosis is established by one of the methods listed in the

18

finding that Swarrow demonstrated "a material change in conditions" is the recognition that Swarrow's respiratory ailment had progressed until Swarrow was totally disabled.

If Swarrow's earlier exposure to coal dust caused his present disability and pneumoconiosis was merely latent at the time of his initial application for benefits but has since become manifest, Swarrow would be entitled to prove that the disease has progressed to the point of total disability since the filing of his original claim. Moreover, if the ALJ were convinced by Swarrow's proofs (and if the ALJ's findings were supported by substantial evidence), Swarrow would be entitled to receive black lung benefits. In sum, we reject Labelle's argument that Swarrow's duplicate claim is barred by res judicata.

V.

Labelle argues, in the alternative,[0] that the ALJ applied the wrong standard in determining whether Swarrow demonstrated "a material change in conditions." The ALJ applied the standard enunciated by the BRB in Spese v. Peabody Coal Co., 11 Black Lung Rep. (MB) 1-174 (Ben. Rev. Bd. 1988) (per curiam). Labelle notes

provision. See 30 U.S.C. § 921(c)(3). Swarrow did not rely on that presumption but rather submitted proof that he was totally disabled due to pneumoconiosis.

[0] Labelle also argues, in the alternative, that the ALJ's decision must be reversed because the ALJ failed to satisfy the factfinder's duty of explanation. In its brief, Labelle fails to specify the findings of fact that the ALJ allegedly did not fully explain. Rather Labelle contests each of the determinations made by the ALJ. Our reading of the ALJ's opinion does not disclose the shortcomings of which Labelle complains. We do not, however, reach or decide this issue in light of our holding that the ALJ applied the incorrect legal standard.

19

that the courts of appeal that have addressed this issue have uniformly rejected the Spese standard.  Labelle argues that the Third Circuit should likewise reject that standard.

Under 20 C.F.R. § 725.309(d), when a miner files more than one claim for benefits, the later claims are merged with the first claim if the earlier claim is still pending.  If an earlier claim has been denied, however, a later claim must likewise be denied "unless the [District Director] determines that there has been a material change in conditions or the later claim is a request for modification and the requirements of § 725.310 are met."  20 C.F.R. § 725.309(d).  Section 725.310 permits the District Director, "at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, [to] reconsider the terms of an award or denial of benefits."  Id. at § 725.310(a).  Therefore, because Swarrow filed his second claim on October 2, 1989, more than one year after the denial of his first claim on February 21, 1986, Swarrow must establish a material change in conditions.

Neither the BLBA nor its associated regulations explicitly define "a material change in conditions."  However, in Spese,[0] the BRB interpreted section 725.309 to require that the claimant submit "evidence which is relevant and probative so that there is a reasonable possibility that it would change the prior administrative result."  Spese, 11 Black Lung Rep. (MB) at 1-176;

---

[0]An appeal of the Board's decision was taken to the United States Court of Appeals for the Seventh Circuit, but was dismissed with prejudice by stipulation.  See Spese v. Peabody Coal Co., No. 88-3309 (7th Cir. Feb. 2, 1989) (order).

20

see also Shupink v. LTV Steel Co., 17 Black Lung Rep. (MB) 1-24, 1-27 (1992); Rice v. Sahara Coal Co., 15 Black Lung Rep. (MB) 1-19, 1-21 (1990) (en banc). In Shupink, the BRB reaffirmed Spese and explained that under the Spese formulation, the ALJ examines only the favorable new evidence and does not weigh the favorable evidence against unfavorable new evidence. Shupink, 17 Black Lung Rep. at 1-28. See also Sharondale Corp. v. Ross, 42 F.3d 993, 997 (6th Cir. 1994).

The Seventh Circuit rejected the Spese standard as "a plain misreading of the regulation [i.e. 20 C.F.R.309(d)] . . . ." Sahara Coal Co. v. Director, OWCP, 946 F.2d 554, 556 (7th Cir. 1991) (Posner, J.). Characterizing the Spese framework as "mak[ing] mincemeat of res judicata," the Seventh Circuit declared that "the [BRB] had confused a change in the claimant's condition with the presentation of newly discovered evidence that might justify reopening the case as under Rule 60(b) of the Federal Rules of Civil Procedure." Id.

In criticizing Spese, the Sahara court voiced its concern that the doctrine of finality, an integral aspect of res judicata, not be eroded by a subsequent application for black lung benefits. As recited by the Sahara court,

> [i]t is not enough that the new application is supported by new evidence of disease or disability, because such evidence might show merely that the original denial was wrong, and would thereby constitute an impermissible collateral attack on that denial.

Id.

21

In place of the Spese/Shupink standard, which looked only to an evaluation of favorable new evidence, the Seventh Circuit offered its own definition of "material change":

> A material change in conditions means either that the miner did not have black lung disease at the time of the first application but has since contracted it and become totally disabled by it, or that his disease has progressed to the point of becoming totally disabling although it was not at the time of the first application.

Id.

Recently, the Fourth Circuit, in Lisa Lee Mines v. Director, OWCP, adopted the Sahara[0] standard over competing formulations. 57 F.3d 402, 407 (4th Cir. 1995). The BRB, however, has refused to acquiesce to the circuit courts' rejection of Spese, instead adhering to its discredited definition of "material change." See Shupink, 17 Black Lung Rep. at 1-27 (stating that the Board would continue to apply Spese "except [in cases] arising within the jurisdiction of the . . . Seventh Circuit.").

We agree with our sister circuits that Spese confuses the standard for modification of a decision with the standard for new claims based on "a material change in conditions."

The Director, while not agreeing with Labelle's res judicata argument, does agree with Labelle that the ALJ erred in following Spese. The Director, however, urges us to adopt a different standard than the standard enunciated in Sahara:

> Under the Director's interpretation, the ALJ must consider all of the new evidence, favorable and unfavorable, and determine whether the miner has proven

_____

[0] The Sahara standard is also commonly referred to as the McNew standard because Mr. McNew was the claimant in Sahara.

22

> at least one of the elements of entitlement previously adjudicated against him. If the miner establishes the existence of that element, he has demonstrated, as a matter of law, a material change. Then the ALJ must consider whether all of the record evidence, including that submitted with the previous claims, supports a finding of entitlement to benefits.

Sharondale Corp. v. Ross, 42 F.3d 993, 997-98 (6th Cir. 1994).

The Sixth Circuit recently embraced the Director's proposed standard after considering the Spese and Sahara standards. See id. at 998. The Sixth Circuit acknowledged that the Sahara standard was "a reasonable interpretation of material change," id. at 997, but deferred to the DOL's interpretation, accurately noting that "courts must defer to the agency 'entrusted by Congress to make such policy determinations.'" Id. at 998 (quoting Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 696 (1991)).

Notably, "[b]ecause the black lung regulations are issued by the [OWCP] rather than by the [BRB], it is to the former body rather than the latter tha[t] we owe the usual deference that courts give agencies' interpretations of their own regulations or governing statutes." Sahara, 949 F.2d at 557. See also Potomac Elec. Power Co. v. Director, OWCP, 449 U.S. 268, 278 n.18 (1980); Director, OWCP v. Barnes & Tucker Co., 969 F.2d 1524, 1527 (3d Cir. 1992); Saginaw Mining Co. v. Mazzulli, 818 F.2d 1278, 1283 (6th Cir. 1987); Bethlehem Mines Corp. v. Director, OWCP, 766 F.2d 128, 130 (3d Cir. 1985).

Of course, deference to an agency's interpretation of its own regulations is warranted only when the interpretation is

23

reasonable.  Chevron, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 845 (1984).  We may supply our own construction of a regulation if the agency's interpretation is "plainly erroneous or inconsistent with the regulation." Lukosevicz v. Director, OWCP, 888 F.2d 1001, 1006 (3d Cir. 1989) (quotations omitted).

Labelle argues that the Director's interpretation is not faithful to the purpose or language of section 725.309(d) (material change in condition) and that we should consequently reject the Director's interpretation.  We disagree.  Adoption of the Director's interpretation accords with the principle that courts should liberally construe remedial legislation, such as the BLBA, so as to include the largest number of claimants within its entitlement provisions.  See Pavesi v. Director, OWCP, 758 F.2d 956, 964 (3d Cir. 1985); Echo v. Director, OWCP, 744 F.2d 327, 330 (3d Cir. 1984).  Because the Director's construction of its own regulation is not unreasonable, deference should be given to that interpretation.


VI.

Lastly, Swarrow urges us to affirm the ALJ's award of benefits, even if we conclude that the ALJ applied the wrong standard, under the theory that the error was harmless.  We cannot agree with that disposition.  The ALJ may very well decide, on remand, that all of the new evidence, favorable and unfavorable, on balance, satisfies (or does not satisfy) the Sharondale standard defining "a material change in conditions."

24

If no material change is found, then Swarrow cannot pursue his second claim.  On the other hand, if the ALJ finds that Swarrow has proved "at least one of the new elements previously adjudicated against him," Sharondale, 42 F.3d at 997, Swarrow will have demonstrated a material change.  At that point, the ALJ must consider all of the record evidence, including that submitted with the prior claim, to determine whether such evidence supports a finding of entitlement to benefits.  These determinations, however, must be made in the first instance by an ALJ.

Accordingly, we will vacate the BRB's September 15, 1994 award of benefits to Swarrow, with the direction that Swarrow's claim be remanded to the ALJ for further proceedings consistent with this opinion.