NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4461
_____

ISPAT/INLAND, INC,
                                        Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR;
LLOYD L. LENTZ,
                                        Respondents
_____

On Petition for Review of an Order of the
Benefits Review Board, United States Department of Labor
(BRB No. 08-0640 BLA)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 11, 2011

Before:  SCIRICA, AMBRO and VANASKIE, *Circuit Judges*.

(Filed April 6, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

        Ispat/Inland, Inc. appeals a final decision of the Department of Labor's Benefits

Review Board awarding Lloyd L. Lentz's claim under the Black Lung Benefits Act, 30

U.S.C. § 901 *et seq.* ("BLBA"). After the administrative law judge awarded benefits in 2006, the Board vacated the ALJ's decision in part and remanded for reconsideration of the proffered medical opinion testimony. The ALJ again awarded benefits on May 5, 2008, and, this time, the Board affirmed. Ispat/Inland, the mine operator responsible for paying benefits, moved unsuccessfully for reconsideration of the Board's decision and then filed a timely appeal with this Court. We will affirm.[1]

I.

Congress enacted BLBA to compensate miners who are totally disabled by pneumoconiosis, which the statute defines as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. §§ 901(a), 902(b). To recover benefits under BLBA, a claimant must demonstrate (1) he suffers from pneumoconiosis; (2) he is "totally disabled"; and

---

[1] We have jurisdiction under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c), which is incorporated by reference in BLBA, 30 U.S.C. § 932(a). We review a Board decision to determine whether an error of law has been made and whether the Board has adhered to its own standard of review. *Lombardy v. Dir., OWCP*, 355 F.3d 211, 213 (3d Cir. 2004). We review questions of law *de novo*, and we note the Board is bound by an ALJ's findings of fact "if they are supported by substantial evidence in the record considered as a whole." *Id.*

Mr. Lentz died on Feb. 11, 2009, without having received any benefit payments from Ispat/Inland. The Black Lung Disability Trust Fund, administered by the Director, commenced paying interim benefits. Our affirmance of the Board's award will obligate Ispat/Inland to reimburse the Trust Fund. *See* 20 C.F.R. 725.603(a). Therefore, the adversity between these parties presents us with a justiciable case or controversy regardless of whether the interest retained by Mr. Lentz's estate (if such exists) would independently suffice to confer jurisdiction. *See Krolick Contracting Corp. v. Benefits Review Bd.*, 558 F.2d 685, 689 (3d Cir. 1977); *Old Ben Coal Co. v. Dir., OWCP*, 292 F.3d 533, 538 n.4 (7th Cir. 2002).

(3) pneumoconiosis is a "substantial contributing cause" of his total disability. *See* 20 C.F.R. §§ 718.201–204.[2] Under the statute, pneumoconiosis may be "clinical" or "legal." The former label refers to the category of diseases recognized by the medical community as pneumoconiosis. 20 C.F.R. § 718.201(a)(1). The latter is defined as "any chronic lung disease or impairment . . . arising out of coal mine employment" including, without limitation, "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). An obstructive pulmonary condition caused by coal dust exposure satisfies the definition of legal pneumoconiosis. *See id.*; *LaBelle Processing Co. v. Swarrow*, 72 F.3d 308, 315 (3d Cir. 1995). Chronic bronchitis, along with emphysema and certain forms of asthma, is a species of chronic obstructive pulmonary disease. 65 Fed. Reg. 79939 (Dec. 20, 2000).

On appeal, Ispat/Inland contends the ALJ improperly created a presumption in favor of entitlement to benefits by discounting their medical opinion testimony to the effect that Lentz's pulmonary obstruction was solely attributable to his extensive history of cigarette smoking and that the contribution of coal dust exposure to his condition was "clinically insignificant." However, the ALJ, on remand, found Lentz to be suffering from both clinical and legal pneumoconiosis. Therefore, because we can affirm the award

---

[2] Pneumoconiosis is a "substantially contributing cause" of a miner's disability if it (1) "[h]as a material adverse effect on the miner's respiratory or pulmonary condition;" or (2) "[m]aterially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment." 20 C.F.R. § 718.204(c).

3

of benefits on grounds unrelated to this allegedly impermissible presumption, we need not conduct a detailed analysis of Ispat/Inland's claim.[3]

## II.

In 2006, the ALJ awarded Lentz's claim for benefits based on legal pneumoconiosis after assessing the competing medical testimony. *See* 20 C.F.R. § 718.202(a)(4) ("A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. . . . Such a finding shall be supported by a reasoned medical opinion."). Although the ALJ found the x-ray evidence did not support a finding of clinical pneumoconiosis, he credited the testimony of Lentz's medical witness, Dr. John T. Schaff, in concluding Lentz's pulmonary condition arose out of his coal mine employment and thus qualified under the statute and regulations as legal pneumoconiosis. *See* 30 U.S.C. § 902(b); 20 C.F.R. § 718.201(a)(2). The ALJ discounted the opinion of the employer's competing medical witness, Dr. Gregory J. Fino, as inconsistent with the regulations. Specifically, the ALJ found Dr. Fino erroneously believed Lentz had to establish the presence of clinical pneumoconiosis in order to qualify for recovery under BLBA. Additionally, the ALJ found Lentz had satisfied the other elements of entitlement: the parties stipulated to the existence of a totally disabling pulmonary impairment pursuant to 20 C.F.R. §

---

[3] We may affirm on any grounds supported by the record. *See Hughes v. Long*, 242 F.3d 121, 123 n.1 (3d Cir. 2001).

718.204(b), and Lentz successfully demonstrated pneumoconiosis was a substantial contributing cause of his disability.

The Board vacated the ALJ's award and remanded for further consideration of the medical testimony. Notably, the Board wrote: "If the administrative law judge finds that claimant has met his burden under Section 718.202(a)(4), he must then weigh all of the evidence relevant to the existence of pneumoconiosis together to determine whether the presence of the disease has been established at Section 718.202(a)."

On remand, the ALJ again awarded benefits. Conceding Dr. Fino's opinion was not contrary to the regulations, the ALJ nevertheless found it poorly reasoned and ill-substantiated. The ALJ opined that Dr. Fino had both confused the issues of disease causation (whether his pulmonary condition arose out of exposure to coal dust) and disability causation (whether pneumoconiosis contributed to his total disability) and had failed to offer a reasoned explanation for why coal dust exposure was not a factor in Lentz's chronic bronchitis. More importantly, however, in heeding the Board's instruction to reweigh all the evidence on the existence of pneumoconiosis, the ALJ reexamined the x-ray evidence and discovered he had made factual errors in reaching his initial decision. *See* 20 C.F.R. § 718.202(a)(1) ("A chest X-ray conducted and classified in accordance with § 718.102 may form the basis for a finding of the existence of pneumoconiosis. . . . [W]here two or more X-ray reports are in conflict, in evaluating

5

such X-ray reports consideration shall be given to the radiological qualifications of the physicians interpreting such X-rays.").[4]

Upon revisiting the x-ray evidence and reanalyzing the diverging medical opinions, the ALJ concluded Lentz "established the existence of both clinical and legal pneumoconiosis by a preponderance of the evidence." As for disability causation, the ALJ found Dr. Fino's opinion unworthy of credence because it rested largely on the premise that the x-ray evidence was negative for pneumoconiosis.

Ispat/Inland again appealed to the Board, challenging the ALJ's findings of legal pneumoconiosis and disability causation. On this occasion, the Board affirmed the award. It concluded the ALJ had acted in accordance with its instructions in reevaluating the evidence and determining Lentz had established both clinical and legal pneumoconiosis. Consequently, it found the ALJ acted within his discretion in according little weight to

---

[4] Originally, the ALJ found the x-ray evidence to be in equipoise. However, upon review, he realized he had erroneously listed the qualifications of the two physicians who read a June 12, 2003 x-ray. Whereas in his first decision he stated that a "B-reader" had interpreted the x-ray as positive for pneumoconiosis and a "duly-qualified physician" had interpreted the x-ray as negative, he realized upon review that it was in fact the duly-qualified physician who had interpreted the x-ray as positive. Because the interpretation proffered by the B-reader is entitled to less weight, this reversal allowed the ALJ to find the June 12 x-ray was positive for pneumoconiosis. Moreover, the ALJ discovered he had listed a reading of a May 13, 2003 x-ray as negative when it was, in fact, simply a "re-reading for quality only" that did not include any findings as to the presence or absence of pneumoconiosis. Removing that "re-reading" from the calculus, the ALJ found the May 13 x-ray to be positive for pneumoconiosis as well. Weighing all the x-rays together, the ALJ found one to be in equipoise and three to be positive. Accordingly, he found Lentz had indeed established clinical pneumoconiosis.

Dr. Fino's opinion on the issue of disability causation because it conflicted with the ALJ's finding on remand that the x-ray evidence evinced clinical pneumoconiosis.

Under BLBA, both clinical and legal pneumoconiosis are compensable forms of the disease; a miner need only prove the existence of one form to achieve eligibility for benefits. Before this Court, Ispat/Inland challenges exclusively the ALJ's findings as to legal pneumoconiosis. However, the ALJ, upon review of the x-ray evidence on remand, found Lentz to be afflicted with clinical pneumoconiosis. The Board acknowledged the ALJ had, in adhering to the Board's admonition to reconsider "all of the evidence relevant to the existence of pneumoconiosis, . . . determined that clinical and legal pneumoconiosis had been established at Section 718.202(a)." Ispat/Inland did not contest this finding before the Board and has not raised the issue in its brief on appeal. Therefore, for our purposes, the finding of clinical pneumoconiosis is a settled matter. *See Balsavage v. Dir., OWCP*, 295 F.3d 390, 395 (3d Cir. 2002) ("If substantial evidence exists, we must affirm the ALJ's interpretation of the evidence even if we might have interpreted the evidence differently in the first instance.") (internal quotation omitted); *Penn Allegheny Coal Co. v. Mercatell*, 878 F.2d 106, 110 (3d Cir. 1989) (declaring an issue waived if not presented to the Board on administrative appeal).

Lentz established each of the other elements of entitlement. Under the statute, a miner suffering from clinical pneumoconiosis who worked for ten or more years in coal-mine-related employment is entitled to a rebuttable presumption that his pneumoconiosis

arose out of that employment. 20 C.F.R. § 718.203(b).[5] Ispat/Inland conceded Lentz was totally disabled due to a pulmonary condition. And the Board held the ALJ "permissibly accorded little weight to Dr. Fino's opinion" on the issue of disability causation because it was predicated on the assumption that Lentz did not have clinical pneumoconiosis. By contrast, the ALJ found Dr. Schaff's opinion on disability causation "adequately reasoned" and concluded Lentz had satisfied his burden with regard to this issue.

The Board affirmed the ALJ's finding "that the weight of the evidence of record was sufficient to establish the existence of pneumoconiosis at Section 718.202(a), and disability causation at Section 718.204(c)." Significantly, the Board did not differentiate between § 718.202(a)(1), which allows for a finding of the existence of pneumoconiosis based on positive x-ray reports, and § 718.202(a)(4), which allows for a claimant to satisfy his burden through medical opinion testimony even in the face of negative x-rays. The Board ordered the ALJ to reconsider all evidence relevant to pneumoconiosis, the ALJ revisited both the x-ray reports (which he concluded established clinical pneumoconiosis under § 718.202(a)(1)) and the testimony (which he concluded established legal pneumoconiosis under § 718.202(a)(4)), and the Board affirmed the ALJ's finding with regard to "the existence of pneumoconiosis at Section 718.202(a)."

Therefore, the Board found the ALJ acted appropriately in finding Lentz had satisfied each element of his claim, and we discern neither an error of law nor a deviation

---

[5] Ispat/Inland disputed whether Lentz's legal pneumoconiosis arose out of his coal-mine work but did not rebut the presumption as to clinical pneumoconiosis. Upon stipulation of

8

from the Board's standard of review. Given Ispat/Inland's cognizance of the ALJ's revised stance on the weighting of the x-ray evidence and the Board's acceptance of the ALJ's findings, we are able to affirm the Board's decision without pronouncing, in this particular case, on the propriety of the ALJ's treatment of the competing medical testimony on the issue of legal pneumoconiosis. *See Lombardy*, 355 F.3d at 213.

### III.

For the foregoing reasons, we will deny the petition for review and affirm the order of the Benefits Review Board.

---

the parties, the ALJ credited Lentz with eighteen years of coal-mine employment.