**PEABODY COAL COMPANY; Old Republic Insurance Company, Petitioners,**

**v.**

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States; Carol Williams Dukes, Respondents.**

No. 01–3043.

United States Court of Appeals, Sixth Circuit.

Oct. 2, 2002.

---

5. The shells were found in a kitchen cabinet.

Before SUHRHEINRICH and BATCHELDER, Circuit Judges; and LITTLE, District Judge.*

PER CURIAM.

Petitioners Peabody Coal Company and Old Republic Insurance Company (collectively "Peabody") appeal from the decision of the Benefits Review Board ("the Board") affirming the Administrative Law Judge's ("ALJ") award of benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 ("the Act"), to Respondent Carol W. Dukes.

## I. Introduction

Peabody raises two issues on appeal. First, it claims Dukes should be denied black lung benefits because his claim, as a subsequent claim, was not timely filed pursuant to the three-year statute of limitations in 30 U.S.C. § 932(f). Second, it asserts that, even if Dukes's claim was timely, no benefits should be awarded because Dukes did not present evidence of a material change in his condition since the dismissal of his earlier claim, as required by *Sharondale v. Ross*, 42 F.3d 993 (6th Cir.1994), and his subsequent claim is therefore barred by res judicata.

Dukes and the Director of the Office of Worker's Compensation Programs (the "Director") respond[1] and Dukes asserts his second claim was timely[2] because, although the subsequent claim was filed outside the statute of limitations, he had filed an initial claim for benefits with the Department of Labor within the statute of limitations period, and that is all § 932(f) requires. Moreover, both Dukes and the Director argue that Dukes has necessarily exhibited a material change in his condition because the ALJ found Dukes now has pneumoconiosis, whereas an Examiner denied his initial claim, finding he did not.

Relying on the plain language of the statute and our previous decision of *Tennessee Consolidated Coal Co. v. Kirk*, 264 F.3d 602 (6th Cir.2001), we find the statute of limitations applies to all Part C claims for black lung benefits filed by a miner,[3] not just the initial one, and begins to run upon the communication to the miner of a medical determination of total disability due to pneumoconiosis. However, we find that Dukes's claim is nonetheless timely because he had not received a "medical determination" under the statute until 1995.

Furthermore, we find the ALJ did not provide sufficient analysis to support the finding that Dukes has manifested a change in condition since his prior denial. We hereby affirm the decision of the Board that Dukes's second claim was timely filed, but vacate the award and remand this cause to the ALJ for a determination of whether Dukes had exhibited a material

---

* The Honorable F.A. Little, Jr., United States District Judge for the Western District of Louisiana, sitting by designation.

1. In front of the Board, the Director intervened as a party in interest and is therefore a Respondent in this appeal.

2. The Director, in his separately filed Respondent's Brief, concedes that Dukes's subsequent claim was untimely. Therefore, Dukes stands alone in this argument.

3. A Part C benefit is paid by the former employer of the miner. This is as opposed to a Part B benefit which is paid by the federal government.

change in his condition between the denial of his first claim and the filing of his second.

## II. Background

Respondent Mr. Carol William Dukes was born in 1928. He worked in the coal mines of Kentucky for nineteen years. Dukes's employment with Peabody terminated on December 31, 1985, when the mine he had worked in for the previous seventeen years closed. Dukes never returned to mine work.

Between 1987 and 1988, Dukes received opinions from several doctors indicating he was suffering from pneumoconiosis, more commonly known as "black lung disease." On February 17, 1988, Dukes filed a claim with the Department of Labor under the Act. The Department of Labor identified Peabody Coal Company as the responsible coal mine operator[4] liable for the claim under 20 C.F.R. §§ 725.490–725.493, and notified them of the pending litigation.

In order to qualify for benefits under the Act, Dukes had to show (1) he was totally disabled (2) due to pneumoconiosis (3) arising at least in part out of coal mine employment. *See Tussey v. Island Creek Coal Co.,* 982 F.2d 1036, 1038 (6th Cir. 1993). The Department of Labor Examiner denied the claim on July 25, 1988, finding, in spite of doctors' opinions to the contrary, Dukes did not meet any of the three criteria required for an award of benefits. Pursuant to Department of Labor procedures, Dukes submitted additional medical evidence, but his claim was again denied on August 29, 1989. Dukes failed to file a timely appeal to the ALJ's office and otherwise declined to pursue his administrative remedies.

Dukes never returned to work, but filed a second application for benefits with the Department of Labor on August 7, 1995. The Department denied this second claim on January 23, 1996, again finding Dukes did not have pneumoconiosis. This time, however, Dukes chose to pursue his administrative options and filed a timely appeal with the ALJ, and the matter was transferred to that office.

A hearing was held, and the ALJ found (1) Dukes's second claim had been timely filed, (2) Dukes had nineteen years of coal mine employment, (3) Dukes had established a material change in condition since the prior denial, (4) Dukes had pneumoconiosis arising out of his coal mine employment, and (5) the pneumoconiosis rendered him totally disabled. Benefits were awarded beginning August 1, 1995.

Peabody filed a timely notice of appeal with the Benefits Review Board, claiming Dukes's 1995 claim should have been time barred based on the three-year statute of limitations that should have commenced whenever Dukes first received a medical determination of his disease, sometime between 1987 and 1988. On September 9, 1999, the Board affirmed the ALJ's findings, stating Dukes's claim was timely because the statute of limitations only applies to a miner's very first claim for benefits. Since Dukes's 1988 claim was timely, all subsequent claims would be as well. Peabody timely filed a motion for reconsideration that the Board denied in November 2000. Peabody then filed a timely petition for review with this Court.

## III. The Statute of Limitations

Peabody claims Dukes's August 7, 1995 claim was outside the three-year statute of

---

4. The responsible coal mine operator is the employer that would be responsible for any Part C benefits awarded to a miner. It is the employer mine that the claimant last worked for, for more than one year. 20 C.F.R. § 725.495.

limitations provided in 30 U.S.C. § 932(f), and should be denied as untimely.

## A. Application of the Statute of Limitations to Subsequent Claims

■ Section 932(f) states "[a]ny claim for benefits by a miner under this section shall be filed within three years after whichever of the following occurs later: (1) a medical determination of total disability due to pneumoconiosis; or (2) March 1, 1978." The provision's implementing regulation, 20 C.F.R. § 725.308(a), further provides:

A claim for benefits filed under this part by, or on behalf of, a miner shall be filed within three years after a medical determination of total disability due to pneumoconiosis which has been communicated to the miner or a person responsible for the care of the miner, or within three years after the date of enactment of the Black Lung Benefits Reform Act of 1977, whichever is later ...

Accordingly, under the language of the statute and the regulation together, the statute of limitations begins to run upon (1) a medical determination of (2) total disability (3) due to pneumoconiosis (4) which has been communicated to the miner.

Peabody claims the ALJ and the Board have erred as a matter of law in misapplying the statute of limitations to Dukes's claim. Legal errors are reviewed by this Court de novo. *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 684–85 (6th Cir.2002); *U.S. v. Leake*, 998 F.2d 1359, 1362 (6th Cir.1993).

There is a rebuttable presumption that any claim made for black lung benefits is timely. 20 C.F.R. § 305.728(c). The burden of proof is therefore on Peabody to show the claim was outside the statute of limitations period. 20 C.F.R. § 725.103.

Dukes was first diagnosed with pneumoconiosis between 1987 and 1988 after examinations by a host of doctors. Dukes's second claim was filed in August, 1995. Accordingly, Dukes's second claim was filed some seven years after his initial diagnosis. However, Dukes agrees with the Board and argues the three-year window only applies to the first Part C claim filed by the miner. Peabody argues it applies to any and all Part C claims made after a medical determination of total disability due to pneumoconiosis.

This Court has previously addressed the statute of limitations on black lung claims. In *Sharondale*, this Court held the three-year statute of limitations resets if the miner has returned to mine work after the initial denial of his claim. In that case, the Court stated the three-year period begins again on each determination of total disability due to pneumoconiosis, and cannot run until the miner finally retires. *Sharondale*, 42 F.3d at 996. However, we expressed no opinion whether the statute applies to a subsequent claim if the miner does not return to the mines.

We addressed the statute of limitations again in *Tennessee Consolidated Coal Co. v. Kirk*, 264 F.3d 602 (6th Cir.2001). In *Kirk*, we stated the statute of limitations does not begin to run until a miner is actually diagnosed by a doctor, regardless of whether the miner believes he had the disease earlier. *Id.* at 607–08. In *Kirk*, the miner misinterpreted the doctor's reports and thought he had been diagnosed with pneumoconiosis, and accordingly, filed a claim for benefits. The claim was denied. The miner was later properly diagnosed with pneumoconiosis and subsequently refiled for benefits. The Board granted the claim, and we affirmed, holding the filing of a premature claim is not sufficient to trigger the statute of limitations. *Id.* at 607–08. In other words, in

*Kirk,* there was no "medical determination" absent a valid medical opinion, notwithstanding prior knowledge or existence of the disease.

In *Kirk,* this Court summarily stated the three-year statute of limitations applies not only to the initial claim after a medical determination, but to all subsequent claims as well. Because *Kirk* essentially turned on whether the miner had previously received a "medical determination," there is some question as to whether our analysis of the subsequent claims issue was dicta.[5] This Court considers as dicta any observation in the opinion of the court unnecessary to the holding in that case. *See Kyle v. OWCP,* 819 F.2d 139, 143 (6th Cir.1987). The argument can be made that since *Kirk* was ultimately decided based on whether the miner had received a "medical determination," the analysis of whether the statute of limitations applies to subsequent claims was unnecessary to the holding. We need not express an opinion as to whether this commentary is dicta because, even if it is, we reach the same result today.

Proper interpretation of the statute of limitations necessarily begins with its language. *See Bd. of Educ. of Westside Cmty. Sch. v. Mergens,* 496 U.S. 226, 237, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990); *Walker v. Bain,* 257 F.3d 660, 666 (6th Cir.2001). The plain language of 30 U.S.C. § 932(f) provides "[a]ny claim for benefits by a miner under this section shall be filed within three years after whichever of the following occurs later– (1) a medical determination of total disability due to pneumoconiosis; or (2) March 1, 1978." Peabody contends "any claim" in the statute means *any* claim filed by the claimant miner, whether it be his initial claim or a subsequent claim, must be filed within three

years of the medical determination of pneumoconiosis. On its face, there seems to be little room for dispute – any claim for benefits must be filed within three years of a medical determination of total disability due to pneumoconiosis.

In the past, this Court has recognized that the Act should be read with every ambiguity determined in favor of the miners. The "Act is remedial legislation that should be liberally construed so as to include the largest number of miners within its entitlement provisions." *Adams v. Director, OWCP,* 886 F.2d 818, 825 (6th Cir. 1989). *See also Southard v. Director, OWCP,* 732 F.2d 66, 71 (6th Cir.1984); *Haywood v. Sec'y of Health and Human Services,* 699 F.2d 277, 281 n. 7 (6th Cir. 1983); *Miniard v. Califano,* 618 F.2d 405, 410 (6th Cir.1980); *Morris v. Mathews,* 557 F.2d 563, 566 (6th Cir.1977). However, we find no ambiguity in this language. The mere fact that the Board has repeatedly interpreted the statute differently does not give credence to the assertion that this statute is ambiguous.

It is our job to interpret Congress's intent based, first and foremost, on the language they chose. "When we can discern an unambiguous and plain meaning from the language of a statute, our task is at an end." *Bartlik v. U.S. Dept. of Labor,* 62 F.3d 163, 166 (6th Cir.1995) (en banc). Accordingly, and in concurrence with the analysis in *Kirk,* we hold that any and all claims filed more than three years after a medical determination of total disability due to pneumoconiosis are untimely. If Congress intended an alternate interpretation, they alone are charged with the chore of rewriting the statute to evidence their desires.

**5.** Though not raised in his brief, Dukes's counsel asserted at oral argument that the decision in *Kirk* that the statute of limitations applies to subsequent claims is dicta.

Any other interpretation of the statute of limitations is virtually unworkable. The Board has adopted a standard allowing all claims as timely, no matter how long between claims, as long as the first one was filed within three years of the medical determination. *See, e.g., Andryka v. Rochester & Pittsburgh Coal Co.*, 14 Black Lung Rep. 1–34 (Ben.Rev.Bd. 1990); *Faulk v. Peabody Coal Co.*, 14 Black Lung Rep. 1–18 (Ben.Rev.Bd. 1990). Dukes argues this is the proper standard under the statute. Beside the fact that the Board's interpretation is clearly inapposite to the plain language of the statute, such a rule would render the statute of limitations essentially useless. Adopting this broad standard destroys the balance a statute of limitations negotiates between the rights of a victim and the ability of a defendant to maintain evidence and be free of potential lawsuits. Under Dukes's view, there would be no statute of limitations at all for subsequent claims if a claimant managed to file one within the three-year window. Given the language used, evidencing some desire to maintain a statute of limitations, this extreme result could not have been what Congress intended.

## B. When Dukes's Statute of Limitations Began to Run

Having determined the statute of limitations applies to subsequent claims, we now must discern when it began to run on Dukes's claim. Under 30 U.S.C. § 932(f), the statute was triggered when Dukes first received a "medical determination of total disability due to pneumoconiosis."

The term "medical determination" is not defined in the statute. The requirement of a "medical determination," however, necessarily implicates that an undiagnosed case of pneumoconiosis does not trigger the statute. Moreover, in *Kirk*, we held that a self-diagnosed case of pneumoconiosis does not trigger the statute, whether the disease actually exists or not. *Kirk*, 264 F.3d at 607 ("[T]he statute makes what Kirk believes about his condition irrelevant to the initiation of the limitations clock."). That is, a miner cannot give himself a "medical determination." A doctor must make the determination. *Id.* at 608.[6] Moreover, in *Sharondale*, we expressly stated that the statute of limitations does not exist to bar premature claims. *Sharondale*, 42 F.3d at 996 ("[A] claimant must be free to reapply for benefits if his first filing was premature."). Our discussion in *Sharondale* was not limited to undiagnosed or self-diagnosed cases, but logically extends to all situations in which the miner has filed a claim but has not yet contracted the disease – including claims filed on the basis of a misdiagnosis.

In light of the denial of his 1988 claim, Dukes's condition was, for legal purposes, misdiagnosed. Although alluded to in *Sharondale*, we have not directly addressed the issue whether a misdiagnosis constitutes a "medical determination" capable of triggering the statute of limitations. But the Tenth Circuit has and concluded that it does not:

> When a doctor determines that a miner is totally disabled due to pneumoconiosis, the miner must bring a claim within three years of when he becomes aware or should have become aware of the determination. However, a final finding by an Office of Workers' Compensation Program adjudicator that the claimant is

---

6. In an unpublished opinion, *Clark v. Karst–Robbins Coal Co.*, No. 93–4173, 1994 WL 709288 (6th Cir.1994), we held a successful state worker's compensation claim does not constitute a "medical determination" of total disability where the opinion deemed the worker to have been "totally disabled," but no doctor had. *Id.* at *1.

not totally disabled due to pneumoconiosis repudiates any earlier medical determination to the contrary and renders prior medical advice to the contrary ineffective to trigger the running of the statute of limitations.

*Wyoming Fuel Co. v. Director, OWCP,* 90 F.3d 1502, 1507 (10th Cir.1996).

■ We agree with the reasoning of the Tenth Circuit and likewise expressly hold that a misdiagnosis does not equate to a "medical determination" under the statute. That is, if a miner's claim is ultimately rejected on the basis that he does not have the disease, this finding necessarily renders any prior medical opinion to the contrary invalid, and the miner is handed a clean slate for statute of limitation purposes. If he later contracts the disease, he is able to obtain a medical opinion to that effect, which then re-triggers the statute of limitations. In other words, this statute of repose does not commence until a *proper* medical determination.

This standard makes sense because pneumoconiosis is judicially recognized as a progressive disease. *See, e.g., Mullins Coal Co. v. Director,* 484 U.S. 135, 138, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987); *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 7–8, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *Gray v. SLC Coal Co.,* 176 F.3d 382, 386 (6th Cir.1999); *Glen Coal Co. v. Seals,* 147 F.3d 502, 510 (6th Cir.1998). *Sharondale's* admonition against triggering the statute in the face of a premature claim is founded on this progressivity. *Sharondale,* 42 F.3d at 996. If we adopt Peabody's view, we would be ignoring the fact that a miner may not contract pneumoconiosis until well after his tenure in the mines has ended.

Furthermore, pursuant to the rejection of his claim in 1988, Dukes should have believed that his doctors had been mistaken and he was free of the disease. It is inherently unjust for the statute of limitations to be running on a miner who does not know he has the disease. This result is commensurate with the Federal Regulations. For the statute to begin to run, the relevant regulation requires a communication of the determination to the miner. 20 CFR § 725.308(a). Accordingly, there is a notice aspect to the triggering of the statute, and the denial of Dukes's claim overrides any notice that may have previously existed.

In *Kirk,* we voiced the concern that if we hold, as we do today, a misdiagnosis does not trigger the statute of limitations, we open the door for unscrupulous miners to shop for compliant doctors, willing to give a diagnosis of pneumoconiosis where the evidence does not support it. *Kirk,* 264 F.3d at 608 n. 5. However, even if a miner were to find such a doctor, there must nonetheless be ample evidence for the Examiner or the ALJ to award benefits. As is evident in Dukes's case, the Examiner does not simply accept the word of the doctor. Therefore, such a scenario is not a great concern unless the miner could also find a compliant Examiner. Besides, if we hold to the contrary, an unscrupulous employer could avoid future liability by purposely making a premature determination—a far more unchecked concern. *See id.* at 608 n. 5. Moreover, notwithstanding these dishonest scenarios which were proposed in *Kirk,* we submit a third, more licit, concern. Holding the miner responsible for a *genuine* misdiagnosis unjustly holds him responsible for the principled medical judgment of a doctor, presumably far more skilled and educated than the miner.

The Act has always been interpreted with every ambiguity weighed in favor of the miner. As noted above, we believe Congress intended to include as many miners under the Act as possible. *Miniard,* 618 F.2d at 410; *Morris,* 557 F.2d at 566.

Accordingly, we weigh the above concerns so as not to begrudge honest miners their benefits simply because there may exist dishonest ones. There are enough administrative checks to limit any or all illegitimate claims. Holding that a misdiagnosis nonetheless triggers the statute would defeat Congress's intention that this be a remedial statute by excluding too many honest miners from its benefits.

Moreover, there is an obvious interest in having miners who may be suffering from pneumoconiosis checked and treated as soon as possible. Holding that a misdiagnosis triggers the statute would ultimately lead to the undesired effect of miners being overly cautious about being screened for the disease. If a miner knows that a misdiagnosis will ultimately mean that he can never again seek benefits should he eventually contract this progressive disease, he will be less likely to be proactive in seeking medical advice during the early stages.

In *Kirk*, we stated in dicta that:

Medically supported claims, even if ultimately deemed "premature" because the weight of the evidence does not support the elements of the miner's claim, are effective to begin the statutory period. Three years after such a determination, a miner who has not subsequently worked in the mines will be unable to file any further claims against his employer, although, of course, he may continue to pursue pending claims.

*Kirk*, 264 F.3d at 608 (footnote omitted). However, we decided *Kirk* on the basis that the miner there *did not* have a medically supported claim. *Id.* at 607. Today, we have carefully considered this issue and hold otherwise.

Our holding does *not* defeat the purposes of the statute of repose. The statute here exists to promote the quick filing of worthy claims. If a miner receives a prop-er medical determination, yet sits on his claim for three years, he will be barred from bringing it.

In sum, none of the opinions of Dukes's 1988 doctors constituted a "medical determination" because Dukes's claim was denied. He ultimately did not receive a "medical determination" until 1995 when he was *properly* diagnosed with the disease. Since he filed his claim that same year, the statute of limitations is not at issue here. Accordingly, we hereby affirm the decision of the Benefits Review Board, and find Dukes's claim was timely filed, albeit for reasons different than those stated by the Board.

## IV. Material Change

Peabody next alleges that, even if Dukes's claim was timely filed, it should have been denied based on lack of new evidence. Under 20 C.F.R. § 725.309(b), a later claim is merged with an earlier claim if the earlier claim is still pending. If, however, the earlier claim had already been denied, the later claim is viewed as a "request for modification" if it meets the requirements of § 725.310. 20 C.F.R. § 725.309(c). Under § 725.310, a later claim can only be a request for modification if it had been filed less than a year after denial of the first, otherwise it is a "subsequent claim." Dukes filed his second claim well more than a year—in fact, approximately seven years—after denial of the first. Accordingly, Dukes's claim is governed by the "subsequent claim" provision:

If a claimant files a claim under this part more than one year after the effective date of a final order denying a claim previously filed by the claimant under this part (see §§ 725.502(a)(2)), the later claim shall be considered a subsequent claim for benefits. A subsequent claim shall be processed and adjudicated in

accordance with the provisions of subparts E and F of this part, except that the claim shall be denied unless the claimant demonstrates that *one of the applicable conditions of entitlement . . . has changed since the date upon which the order denying the prior claim became final.*

20 C.F.R. § 725.309(d) (emphasis added). In other words, even if a subsequent claim is timely under the statute of limitations, the claim will be barred by principles of res judicata unless the miner can show a material change in his condition.

To prove a claim, a miner must show he is totally disabled by pneumoconiosis arising at least in part out of coal mine employment. *Sharondale,* 42 F.3d at 998 n. 2 (quoting *Tussey,* 982 F.2d at 1038). Dukes's first claim was denied because the Examiner determined, first and foremost, he did not suffer from pneumoconiosis. This Court, in *Sharondale,* adopted the following test to determine whether a material change has occurred:

> [T]he ALJ must consider all of the new evidence, favorable and unfavorable, and determine whether the miner has proven at least one of the elements of entitlement previously adjudicated against him. If the miner establishes the existence of that element, he has demonstrated as a matter of law, a material change. Then the ALJ must consider whether all of the record evidence, including that submitted with the previous claims, supports a finding of entitlement to benefits.

*Sharondale,* 42 F.3d at 997–98. Since, primarily, the existence of pneumoconiosis was the element originally adjudicated against Dukes, he must now show, through a comparison of the old and new evidence, that not only does he now suffer from pneumoconiosis, but that his condition has worsened. A simple disagreement with the original evidence is not enough.

The standard of review is well settled in cases appealed from the Benefits Review Board. We will affirm any finding of fact made by an ALJ if supported by substantial evidence. *See Glen Coal Co. v. Seals,* 147 F.3d 502, 510 (1998); *Paducah Marine Ways v. Thompson,* 82 F.3d 130, 133 (6th Cir.1996); *Consolidation Coal Co. v. Worrell,* 27 F.3d 227, 230–31 (6th Cir.1994); *Director, OWCP v. Rowe,* 710 F.2d 251, 254 (6th Cir.1983). The ALJ's findings of fact will be upheld if reasonable and supported by a fair and accurate reading of the record. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). We will review any finding of law, exercising plenary review authority, de novo. *See Peabody Coal Co. v. Greer,* 62 F.3d 801, 804 (6th Cir.1995). The ALJ determined that Dukes has contracted, and is totally disabled by, pneumoconiosis. Whether Dukes had contracted pneumoconiosis by August 1995 is a factual determination, and we review using the substantial evidence standard.

*Sharondale* involved facts somewhat similar to these here. The miner, Milford Ross, had applied for benefits in 1979. In 1981, the ALJ found his x-ray evidence negative for pneumoconiosis, and denied the claim. Ross returned to mine work after the denial, and again filed for benefits in 1985. This time, the ALJ viewed the x-ray evidence as positive for pneumoconiosis. On this basis, the ALJ had determined a "material change" had occurred. We remanded the case to the ALJ for further proceedings, holding the ALJ did not properly analyze the facts. The ALJ's basis for determining that a "material change" had taken place was not annunciated and not supported by the evi-

dence. The 1985 claim was supported by positive and negative x-ray readings by both "B" readers and "non-B" readers,[7] but the 1979 readings were as well. We were "unable to discern on the record before [us] whether the ALJ merely disagreed with the previous characterization of the strength of the evidence or whether Ross indeed had shown the existence of a material change in his condition since the earlier denial." *Sharondale*, 42 F.3d at 999. In other words, the ALJ must find the material change based on an actual worsening of the condition, and not based on his disagreement with the Examiner who denied the initial claim. Furthermore, the ALJ must provide an evidentiary comparison in his opinion to support the existence of a "material change." *Id.* at 997–98.

In *Kirk*, the ALJ made a similar error to that in *Sharondale* and failed to show a worsening of the condition between the first and second claims. However, in that case, the doctors treating the miner, Jack Kirk, all generally agreed he had pneumoconiosis by the time of the second claim, and that the condition had worsened in the previous years. *Kirk*, 264 F.3d at 609. This Court upheld the decision, in spite of the ALJ's error[8] because there was substantial and overwhelming evidence in the record before us to support the ALJ's unpremised conclusion, notwithstanding his lack of analysis.

To determine here whether there is substantial evidence to support the ALJ's findings, we must delve into Dukes's muddled medical history. It is unnecessary to recount all of Dukes's examinations, but a brief sampling is at least required. In regard to his claims, Dukes was first examined in 1986. In that year, Dr. Ballard Wright conducted a complete exam, including a chest x-ray and diagnosed Dukes with pneumoconiosis. Within the next year, Dukes was examined by Dr. Jackson at the University of Kentucky and a Dr. Gallo. Both Drs. Jackson and Gallo concluded that Dukes *did not* suffer from pneumoconiosis. Ultimately, in 1987, Dukes was examined by Drs. Gary Givens and Valentino Simpao. These doctors concluded Dukes, did, in fact, have pneumoconiosis. All in all, for this first claim, there were a total of six x-rays, read by a total of ten doctors a total of twelve times. Of the twelve readings, eight were positive, four were negative, including both positive and negative readings by "B" readers.

Dukes was examined for his second claim beginning in 1995. A brief sample of his examinations includes the following. Dr. Simpao examined Dukes again and opined that Dukes was indeed suffering from pneumoconiosis. This was consistent

---

7. A "B" reader is a radiologist who has demonstrated proficiency in assessing and classifying x-ray evidence of pneumoconiosis and greater weight may be given to his diagnosis. *Sharondale*, 42 F.3d at 999 n. 4 (quoting *Blackburn v. Director*, 10 BRBS 108 (1979)).

8. In *Kirk*, this Court considered the potential injustice of remanding the case to the ALJ because of the error:

> It is noteworthy that a remand, urged by [the employer], would almost certainly result in an ALJ decision in favor of claimant on this point. Such a decision, as [the employer] acknowledges, would be supported by substantial evidence and thus immune from review, making it unclear what jurisprudential purpose would be served by adopting [the employer]'s position. On the other hand, Mr. Kirk has been waiting for more than nine years for a decision from the federal system regarding his black-lung benefits. Avoiding further years of delay on a remand with a foregone conclusion would certainly be, in the words of [*Director, OWCP v. Quarto Mining Co.*, 901 F.2d 532, 536 (6th Cir.1990)], avoiding "potential injustice."

*Kirk*, 264 F.3d at 610 n. 8.

with Simpao's 1987 diagnosis. Dukes was then successively examined by Drs. Selby, Fino, and Branscomb. Selby, a "B" reader, took an x-ray of Dukes's chest and concluded he was not suffering from pneumoconiosis, but instead was suffering from a form of emphysema caused by his heavy smoking. Dr. Branscomb, also a "B" reader, and Dr. Fino performed reviews of the medical evidence and likewise concluded Dukes *did not* suffer from pneumoconiosis. Dr. Maurice Bassali, another "B" reader, then reviewed Dr. Selby's x-ray and concluded the x-ray was *positive* for pneumoconiosis.[9] For this second claim, Dukes had four x-rays taken, read fourteen times by thirteen physicians. These x-rays produced nine readings of negative for pneumoconiosis, with several positive and negative readings by "B" readers.

In his opinion dated December 22, 1997, the ALJ accepted the opinion of Dr. Bassali, finding pneumoconiosis on the latest x-ray. The ALJ gave more weight to Bassali's opinion, as is appropriate given Bassali's qualifications as a "B" reader. *See Warman v. Pittsburgh & Midway Coal Mining Co.*, 839 F.2d 257, 261 n. 4 (6th Cir.1988). The ALJ, however, never analyzed the substantive differences between the new evidence and the 1988 evidence. He simply accepted Bassali's opinion, providing no discussion on whether the disease had progressed since 1987.[10] The ALJ made no mention in his decision as to how this evidence was at all different from the first, except to the effect that, this time, it was Dr. Bassali who read the x-rays.[11] This lack of analysis is uncannily identical to the error in *Sharondale* that required a remand.

A subsequent claim is not an appeal of the first claim, but an independent claim for benefits based on new evidence. "No minor (sic) is entitled to benefits simply because his claim should have been granted." *Sharondale*, 42 F.3d at 998. Accordingly, since the ALJ's opinion lacks the kind of analysis required by *Sharondale*, we remand this cause to the ALJ for further proceedings. In accordance with *Sharondale*, the ALJ is to compare the 1988 evidence with the 1995 evidence and grant Dukes's claim if and only if the evidence shows his condition had worsened since the initial denial.[12]

## V. Conclusion

In sum, for the foregoing reasons, we **AFFIRM** the decision of the Board that Dukes's 1995 claim was timely filed. However, we **VACATE** the award affirmed by the Board and **REMAND** this cause to the

---

9. It is unclear whether Dr. Bassali was the only doctor to read this particular x-ray. The ALJ's opinion states in one part that "this interpretation is contradicted by the readings of the same x-ray by Drs. J. Selby and B. Branscomb" and in another part states the x-ray read by Dr. Bassali "is over one year more recent than the preceding x-ray." Dukes's brief is similarly unclear, but from the medical records, it appears Drs. Selby and Branscomb's diagnoses came from this same x-ray.

10. The ALJ never made mention of the progression of the disease. He only stated his conclusions, relying on Bassali's opinion that Dukes now had pneumoconiosis.

11. Bassali's opinion was based on the newest x-ray, but it is unclear whether this x-ray was different from the others, including the ones from 1987, or if Bassali just disagreed with some of the previous readings.

12. Incidentally, this case is distinguishable from *Kirk*. Many, if not most, of Dukes's doctors disagreed with the opinion that Dukes had pneumoconiosis in 1995. Therefore, there is a genuine split and not the general acknowledgment that was present in *Kirk*.

ALJ for a determination of whether the 1995 evidence reflected a material change in Dukes's medical condition from 1988.

BATCHELDER, Circuit Judge.

The majority's opinion highlights, and attempts to remedy, a notable flaw in Congress's and the Department of Labor's framework for dealing with the problem of black lung disease in coal miners. Specifically, it holds that the "medical determination of total disability due to pneumoconiosis," 20 C.F.R. § 725.308(a), which starts the clock running on the statute of limitations, is stopped and reset by the legal determination that the miner seeking benefits does not qualify for those benefits at that time.

While I doubt not the wisdom of the policy the Court announces today, I am unable to acquiesce in a reading of § 725.308(a) that is contrary to its plain language. Under the regulation, a medical determination of total disability due to pneumoconiosis is made and communicated to the aggrieved miner by a medical professional. A legal professional's ruling on that medical determination is incidental to whether the statute of limitations had begun to run pursuant to the terms of § 725.308(a).

I respectfully dissent.