**Dollie KENDRICK, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 02–3192.

United States Court of Appeals, Sixth Circuit.

July 23, 2003.

Before KEITH, SUHRHEINRICH and CLAY, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Petitioner Dollie Kendrick, the widow of Robert E. Kendrick, a coal miner, appeals the decision of the Department of Labor's Benefits Review Board ("Board"), affirming an Administrative Law Judge's ("ALJ") determination denying her request for federal Black Lung Benefits as a survivor to her late husband.[1]

The ALJ denied Kendrick's claim, finding that it was a duplicative claim, and barred by principles of *res judicata*, because Kendrick had filed an earlier claim in 1983 that was denied on its merits. The Board affirmed the ALJ's decision. We affirm the decision of the Board.

I.

Robert Kendrick was born on December 7, 1925. During his adult life, he worked as a coal miner in Kentucky. Although his work history is not clearly presented in the briefs or in the record, it appears that Kendrick accumulated between seven and eight years in the mines. He worked for two different mines from November 1946 to September 1950, and then left mining.

---

**1.** Dollie Kendrick has appealed this case *pro se* with the help of her son-in-law, James Plaunt, a non-lawyer.

He returned to mine work in 1974, where he worked as a bolter and driller until January 1976. It appears he took another year off, and then, in January 1977, took another job as a driller. His last mine position was with the Carryback Coal Company in Prestonsburg, Kentucky. He retired from mine work altogether in August 1978.

Kendrick apparently began to develop lung problems, and, on October 26, 1978, first filed a claim with the Department of Labor for federal Black Lung Benefits under the provisions of Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Reform Act ("BLBRA") of 1977. 30 U.S.C. §§ 901–945. At some point, Kendrick also filed a claim for state benefits under the Kentucky Workmen's Compensation Act. K.R.S. § 342.0011, *et seq.* (1978).

In order to prove a case for federal Black Lung Benefits, the miner must show: 1) that he was a coal miner as defined by the statutes and regulations; 2) that he was totally disabled; 3) due to pneumoconiosis; and 4) that his pneumoconiosis is attributable to his work in the mines. 20 C.F.R. § 410.410(b). In order for a surviving spouse to obtain benefits, she must show that the miner's death was "due to pneumoconiosis." 20 C.F.R. § 725.212(a)(3)(ii). To establish death due to pneumoconiosis, it is sufficient to establish that pneumoconiosis is a "substantially contributing cause or factor leading to the miner's death" or for the miner's death to be "caused by complications of pneumoconiosis." 20 C.F.R. § 718.205(c)(2).

Pneumoconiosis, more commonly known as black lung disease, is a dust disease of the lungs caused by overexposure to coal dust during coal mine employment. *See, e.g., Dailey v. Director, OWCP,* 936 F.2d 241, 242 (6th Cir.1991). In 1978, Robert Kendrick had visited several doctors to test for the disease. Each of the doctors visited by Kendrick relied primarily on x-ray evidence. Dr. James P. Adams examined Kendrick many times, last seeing him on October 17, 1978. When deposed, Adams stated that "it is [his] medical opinion that ... [Kendrick] does have coal worker[']s pneumoconiosis and is disabled for any form of gainful employment." On November 17, 1978, Dr. Lowell D. Martin examined Kendrick. He stated that he had diagnosed Kendrick with a "Category A," which Martin explained was "indicative by definition of advanced pneumoconiosis." On December 5, 1978, Dr. Robert W. Penman examined Kendrick. He concluded that "[t]here is an adequate history of exposure to coal mine dust and x-ray change for diagnosis of coal workers pneumoconiosis stage I." On December 18, 1978, Dr. Richard P. O'Neill examined Kendrick. He opined that Kendrick "probably" had coalworker's pneumoconiosis, but that he could not say for certain based only on x-ray evidence. He stated that the only way to know for sure would be through a pathological examination performed on the lungs. On December 21, 1978, Dr. William H. Anderson examined Kendrick and found he suffered from Category I pneumoconiosis, among other lung diseases. On February 2, 1979, a Dr. Sutherland examined Kendrick. He stated that it was "unknown" whether Kendrick's condition was related to dust exposure.

On October 22, 1979, Kentucky awarded Kendrick benefits under his state claim. Kendrick had presented the Kentucky Workmen's Compensation Board the same medical evidence discussed above. In a short opinion providing only findings of fact with no analysis, the State Board found that Kendrick was "totally and permanently disabled as a result of the occu-

pational disease of silicosis/pneumoconiosis. . . ."

On May 10, 1980, Kendrick married the Petitioner, Dollie Kendrick. On September 16, 1980, the Department of Labor denied Robert Kendrick's federal claim. He filed a request for a formal hearing with an ALJ by letter on December 9, 1980. Robert Kendrick died on May 27, 1983, while his request for a hearing was still pending. Dollie Kendrick filed a claim for Black Lung Benefits as Robert's surviving spouse, on June 13, 1983. Her claim was likewise denied on December 9, 1983. On December 15, she also sent a letter requesting a formal hearing. The two claims were consolidated and transferred to the ALJ's office on May 4, 1984.

On March 26, 1986, the ALJ held a hearing on this matter in Prestonsburg, Kentucky. The ALJ denied the consolidated claims, finding that the Kendricks had not established that Robert had suffered from pneumoconiosis. The ALJ relied most heavily on the extensive autopsy and postmortem reports. Many doctors reviewed Robert Kendrick's case. The bulk of the opinions concluded that Robert Kendrick did not have pneumoconiosis when he died. For example, one post-mortem report, authored by a Dr. Green, concluded that "[n]o evidence of coal workers' pneumoconiosis or other forms of pneumoconiosis were found in the lung parenchyma." A Dr. Caffrey likewise concluded that "[i]t was [his] opinion that the necessary findings to make a diagnosis of coal workers' pneumoconiosis are definitely not present on the slides [he had] reviewed, therefore it would be [his] opinion that [Robert Kendrick] did not have the disease entity or any other occupational pneumoconiosis. . . ." Furthermore, after his review of the post-mortem pathological evidence, Dr. O'Neill recanted his 1978 diagnosis, opining that Robert Kendrick did not suffer from pneumoconiosis, and that his lung problems were "primarily caused by his habit of cigarette smoking."

The only doctor who reviewed Robert Kendrick's autopsy evidence and found pneumoconiosis was a Dr. Bartlett, a professor of surgery at the University of Michigan. The ALJ downplayed his evidence finding that his letters were "conclusory and [did] not contain a detailed description of his own gross and microscopic examination of [Robert Kendrick's] lung tissue, if indeed he made such an examination." The ALJ therefore concluded that Robert Kendrick did not have pneumoconiosis.

Moreover, the ALJ rejected the reports made by Drs. Adams, Martin, Penman, and Anderson while Robert Kendrick was alive, because their diagnoses were based on x-ray evidence, which was later refuted by post-mortem pathological examinations. *See Gray v. SLC Coal Co.*, 176 F.3d 382, 388 (6th Cir.1999) (stating that x-ray evidence is not always reliable); *cf.* 30 U.S.C. § 923(b), BLBRA § 413(b) (stating that claim for benefits cannot be denied solely on basis of negative x-ray).

Dollie Kendrick did not appeal the dismissal of her and her late husband's claims to the Board. However, on January 29, 1999, more than twelve years after the ALJ's decision, Dollie Kendrick filed another claim for survivor's benefits with the Department of Labor.

The Department of Labor denied her claim again, and she requested a hearing with an ALJ. Upon her request, her case was transferred the ALJ's office. The ALJ issued an Order to Show Cause on December 15, 2000, asking Kendrick why her 1999 filing was not duplicative of her 1983 filing, and therefore barred by *res judicata*. She apparently was non-responsive to the procedural issue posed, and instead continued to argue her claim on

the merits. Accordingly, the ALJ issued an Order of Dismissal on January 5, 2001, canceling the scheduled hearing. In his order, the ALJ stated that Kendrick's claim had been adjudicated on the merits in 1986, and that her 1999 claim was a duplicative claim under 20 C.F.R. § 725.309(d). Her claim was barred by *res judicata.*

Kendrick appealed to the Board. On January 17, 2002, the Board issued a short decision. denying Kendrick's appeal and finding that substantial evidence supported the ALJ's decision. Kendrick has appealed this matter to this Court. She sent a letter to the Court on February 13, 2002, annunciating her desire that we review the Board's decision. This cause is timely.

## II.

Judicial review of an administrative agency's decision is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the ALJ applied the correct legal standards. *See, e.g., Kentland Elkhorn Coal Corp. v. Hall,* 287 F.3d 555, 559 (6th Cir.2002); *Steeltech, Ltd. v. Envir. Protect. Agency,* 273 F.3d 652, 657 (6th Cir.2001).

## III.

Essentially, Kendrick argues in her brief that the ALJ's 1986 decision was wrongly decided. She relies mainly on the 1978 medical evidence that the ALJ considered and expressly rejected in 1986. Kendrick also relies on the fact that the Kentucky Workmen's Compensation Board found her husband disabled with pneumoconiosis, viewing substantially the same evidence, and awarded him state benefits in 1979.

However, whether the ALJ's 1986 decision was correct and supported by the evidence is not before this Court. This case is before us on the procedural dismissal of her 1999 claim due to principles of *res judicata.* Kendrick, proceeding *pro se,* asks us to re-examine the 1978 medical evidence and address her 1983 claim for Black Lung Benefits on the merits. We have no jurisdiction to conduct such a review.

Under 20 C.F.R. § 725.309(b), a second claim for benefits is merged with an earlier claim if the earlier claim is still pending. If, however, the earlier claim had already been denied, the later claim is viewed as a "request for modification" if it meets the requirements of § 725.310. Under § 725.310, a later claim is a "request for modification" only if it had been filed less than a year after the denial of the first; otherwise it is a "subsequent claim." *See also Peabody Coal Co. v. Director. OWCP,* 48 Fed.Appx. 140 (6th Cir.2002) (per curiam).

Under § 725.309(d), a "subsequent claim" will be denied as duplicative and barred by principles of *res judicata* unless the miner (or in this case, his survivor) can demonstrate that "one of the applicable conditions of entitlement ... has changed since the date upon which the order denying the prior claim became final." Because the ALJ originally found that Robert Kendrick did not have pneumoconiosis, and that his death was not due to that disease, Dollie Kendrick must now present new evidence to support the opposite conclusion. However, a disagreement with the original evidence is not enough. Dollie Kendrick must demonstrate that Robert Kendrick's condition has materially changed since the ALJ's determination in 1986. *See, e.g., Sharondale v. Ross,* 42 F.3d 993, 997–98 (6th Cir.1994). Unfortunately, Robert Kendrick passed away in 1983. Accordingly, as a matter of law, his condition cannot have materially changed between 1986 and 1999.

In any event, Dollie Kendrick has not presented any new evidence at all. She

has merely presented the 1979 testimonies of the five doctors that diagnosed Robert Kendrick as disabled with pneumoconiosis in 1978.[2] This evidence was considered by the ALJ in 1986. An adjudication on the merits would necessarily involve a re-examination of the same evidence that the ALJ held insufficient in 1986. Principles of *res judicata* bar re-litigation of the same issue absent new evidence. *See Drummond v. Commissioner,* 126 F.3d 837, 840–41 (6th Cir.1997). Therefore, we find that substantial evidence supports the ALJ's decision to deny Kendrick's 1999 claim as duplicative and barred by *res judicata.*

## IV.

For the foregoing reasons, we AFFIRM the decision of the Benefits Review Board.

**2.** This includes the 1979 testimony of Dr. O'Neill, stating that Robert Kendrick "probably" suffered from pneumoconiosis, even though this diagnosis was later recanted by O'Neill once he had an opportunity to examine the post-mortem pathological evidence.