RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

PEABODY COAL COMPANY,

　　　　　　　　　　　　*Petitioner*,

　　　　v.

No. 12-3568

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR; VIRGIL BRIGANCE,

　　　　　　　　　　　　*Respondents*.

Appeal from the Benefits Review Board.
No. 11-0418 BLA.

Argued: April 24, 2013

Decided and Filed:  June 10, 2013

Before:  GRIFFIN and KETHLEDGE, Circuit Judges; ZATKOFF, District Judge.[*]

_____

## COUNSEL

_____

**ARGUED:** Mark E. Solomons, GREENBERG TRAURIG LLP, Washington, D.C., for
Petitioner.  Elizabeth Ashley Bruce, BRUCE LAW FIRM, Greenville, Kentucky, for
Respondent Brigance.   **ON BRIEF:** Mark E. Solomons, Laura Metcoff Klaus,
GREENBERG TRAURIG LLP, Washington, D.C., for Petitioner.  Elizabeth Ashley
Bruce, BRUCE LAW FIRM, Greenville, Kentucky, for Respondent Brigance.

_____

## OPINION

_____

　　　　GRIFFIN, Circuit Judge.  Respondent Virgil Brigance admitted that he waited
seven years after a medical determination of total disability due to pneumoconiosis was
communicated to him to file a claim under the federal Black Lung Benefits Act

_____

[*]The Honorable Lawrence P. Zatkoff, Senior United States District Judge for the Eastern District
of Michigan, sitting by designation.

("BLBA"). Nonetheless, the Administrative Law Judge ("ALJ") held that Brigance's claim was not barred by the BLBA's three-year statute of limitations, 30 U.S.C. § 932(f), because the ALJ could not determine whether the diagnosis was well-reasoned and well-documented. The Benefits Review Board ("Board") agreed that the claim was timely and ultimately affirmed the award of benefits. Petitioner Peabody Coal Company now seeks review, limited to the timeliness issue. We conclude that the lower tribunals erred by imposing requirements for the triggering of the limitations period that are not prescribed by the text of the statute or its implementing regulations. For this reason, we grant the petition and reverse.

I.

Brigance worked for Peabody as a coal miner for twenty years, inhaling coal dust on a daily basis. He stopped working in 1994 because of shortness of breath, which also prevented him from obtaining subsequent employment. Soon after ending his employment with Peabody, Brigance filed a claim for State of Kentucky black lung benefits. Brigance received an award of Kentucky state law benefits, but the benefits expired after approximately eight years.

On November 1, 2001, Brigance filed the instant claim for federal benefits under the BLBA. At a hearing held on December 14, 2004, Brigance testified that he submitted evidence that he was totally disabled due to pneumoconiosis in support of his state benefits claim, filed in 1994 or 1995. Specifically, he submitted a report by two doctors who opined that he was totally disabled due to black lung disease. Brigance admitted that he saw this report and knew at that time that the doctors had medically determined that he was totally disabled due to black lung disease.

Nonetheless, the ALJ concluded that Brigance's claim was not barred by the three-year statute of limitations. Although acknowledging that Brigance knew of his black lung diagnosis approximately seven years before filing the instant claim, the ALJ held that the triggering of the limitations period requires that the diagnosis be not only communicated to the claimant, but also "well-documented and well-reasoned." The ALJ relied on *Furgerson v. Jericol Mining, Inc.*, BRB Nos. 03-0798 BLA and BLA-A, 2004

WL 6045129 (Ben. Rev. Bd. Sept. 20, 2004), an unpublished decision in which the Board held that *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602 (6th Cir. 2001), required a ruling by the ALJ on whether a medical professional "rendered a well-reasoned diagnosis of total disability due to pneumoconiosis."

Turning to the instant claim, the ALJ stated:

[Brigance's] hearing testimony establishes that a diagnosis of total disability due to pneumoconiosis was articulated to [him]. The conflict with the regulations, however, arises when trying to prove that the medical diagnosis of total disability due to pneumoconiosis communicated to [him] was well-reasoned and well-documented.

The ALJ noted that the record in the present case does not contain the medical report that Brigance submitted in support of his State of Kentucky black lung benefits claim. Thus, the ALJ concluded that he was unable to determine whether the diagnosis rendered in 1994 or 1995 was well-documented and well-reasoned. For this reason, the ALJ ruled that Brigance's claim for BLBA benefits was timely. Turning to the merits, the ALJ ruled that Brigance had again established total disability due to pneumoconiosis and accordingly awarded him federal benefits.

The Board agreed with the ALJ that Brigance's claim was timely:

In defining what constitutes a medical determination that is sufficient to start the running of the statute of limitations, the Sixth Circuit court, in *Kirk*, stated that the statute relies on the "trigger of the reasoned opinion of a medical professional." Under the language set forth in *Kirk*, claimant's mere statement that he was told by two physicians that he was totally disabled by black lung is insufficient to trigger the running of the statute of limitations.

After additional administrative proceedings, the Board affirmed the ALJ's award of benefits. Peabody petitions for review.

## II.

This case requires us to decide, for purposes of the running of the limitations period, whether the record must establish that a medical determination of total disability

due to pneumoconiosis was not only communicated to the miner but also that the diagnosis was well-reasoned and well-documented. Interpretations of the BLBA's statute of limitations are legal conclusions, which we review de novo. *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 477 (6th Cir. 2011); *Conley v. Nat'l Mines Corp.*, 595 F.3d 297, 301 (6th Cir. 2010) (explaining that the issue whether the correct legal standard was applied presents a question of law over which this court has plenary review)*; see Black Diamond Coal Mining Co. v. Dir., OWPC*, 95 F.3d 1079, 1082 (11th Cir. 1996) (per curiam) (reviewing interpretations of the BLBA de novo because neither the ALJ nor the Board were policymakers charged with construing their own regulation).

"Proper interpretation of the statute of limitations necessarily begins with its language." *Peabody Coal Co. v. Dir., OWCP* ("*Dukes*"), 48 F. App'x 140, 144 (6th Cir. 2002) (per curiam).

> It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms.

*Caminetti v. United States*, 242 U.S. 470, 485 (1917).

The BLBA's statute of limitations provides in relevant part that a "claim for benefits by a miner . . . shall be filed within three years after . . . a medical determination of total disability due to pneumoconiosis" has been made. 30 U.S.C. § 932(f). To trigger the running of the limitations period, the implementing regulation, which is entitled to deference, requires the diagnosis to have "been communicated to the miner." 20 C.F.R. § 725.308(a); *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 845 (1984). "Accordingly, under the language of the statute and the regulation together, the statute of limitations begins to run upon (1) a medical determination of (2) total disability (3) due to pneumoconiosis (4) which has been communicated to the miner." *Dukes*, 48 F. App'x at 143. The issue in this appeal concerns the meaning of "medical determination."

Although statutorily undefined, "medical determination" is not without meaning. "Medical determination" as used in § 932(f) plainly does not include undiagnosed or self-diagnosed cases of pneumoconiosis, even if the claimant actually has the disease. *Arch of Ky., Inc. v. Dir., OWCP*, 556 F.3d 472, 481–82 (6th Cir. 2009). The language also requires a diagnosis from a medical professional trained in internal and pulmonary medicine—*i.e.*, a physician with expertise in diagnosing pneumoconiosis. *Id.* at 482 ("[A] medical diagnosis [of pneumoconiosis] does not include one by a dentist, an optometrist, a pediatrician, a registered nurse, or a pharmacist, even though all of these are medical professionals."). In addition, because of the progressive nature of the disease, we have held that a misdiagnosis does not constitute a "medical determination" within the meaning of the statute. *Dukes*, 48 F. App'x at 146 ("[I]f a miner's claim is ultimately rejected on the basis that he does not have the disease, this finding necessarily renders any prior medical opinion to the contrary invalid, and the miner is handed a clean slate for statute of limitation purposes.").

Brigance suggests that the term "medical determination" is necessarily ambiguous because it is undefined. He argues that the ambiguity should be construed in favor of the miner, consistent with the remedial purpose of the statute, to require documentary evidence in the record establishing that the diagnosis of total disability due to pneumoconiosis was well-reasoned. We disagree. Because the statute does not provide that the medical diagnosis communicated to the miner must be in the record and well-reasoned, it unambiguously does not impose such requirements. The language is susceptible to no other understanding. Although construing "medical determination" to require sound reasoning and documentation would presumably favor miners, doing so would be contrary to the statutory language and intrude upon the province of Congress. *Dukes*, 48 F. App'x at 144. "When we can discern an unambiguous and plain meaning from the language of a statute, our task is at an end." *Bartlik v. U.S. Dep't of Labor*, 62 F.3d 163, 166 (6th Cir. 1995) (en banc).

Construing the text of the statute as written, we hold that when a diagnosis of total disability due to pneumoconiosis by a physician trained in internal and pulmonary

medicine is communicated to the miner, a "medical determination" sufficient to trigger the running of the limitations period has been made. No more is required. Additional findings regarding whether the medical determination is well-reasoned and well-documented are not necessary.

To hold otherwise would improperly conflate the statute of limitations with the merits of the claim. Statutes of limitation are intended to stave off stale claims, not weak claims. *See Vill. of Milford v. K-H Holding Corp.*, 390 F.3d 926, 932 (6th Cir. 2004) (listing as a policy concern associated with statutes of limitation the "elimination of 'stale' claims in which evidence is likely to have been forgotten or destroyed"). We must also avoid a construction that renders the statute of limitations or another provision of the BLBA insignificant or meaningless. *See Duncan v. Walker*, 533 U.S. 167, 174–76 (2001); *Carter v. United States*, 110 F. App'x 591, 595 (6th Cir. 2004).

The limitations period begins to run when a medical determination of total disability due to pneumoconiosis is communicated to the miner. Whether the diagnosis is well-reasoned or otherwise accurate (whether the miner is *in fact* totally disabled due to pneumoconiosis) is irrelevant for purposes of the statute of limitations. The accuracy of the diagnosis is appropriately considered on the merits when determining a miner's entitlement to benefits. *See* 20 C.F.R. § 718.1. This conclusion follows from the statutory language and avoids a construction that renders any portion of the statute superfluous.

In erroneously concluding that a medical determination must be well-reasoned and well-documented, the lower tribunals relied principally on this court's decision in *Kirk*. In *Kirk*, the employer failed to rebut the presumption of timeliness because the only medical determination of total disability filed more than three years earlier "specifically denied that the disability was due to pneumoconiosis." *Kirk*, 264 F.3d at 607. That is, because the causation element ("due to pneumoconiosis") was lacking, the medical determination relied on by the employer was "incapable of starting the § 932(f) clock." *Id*. Although the claim was timely for lack of causation alone, our court made additional observations. Of relevance here, we rejected the employer's argument that

the claimant was on "notice" of his disability more than three years before filing his claim, explaining that the statute is not based on principles of mere "accrual" but instead "relies on the far more explicit trigger of the *reasoned opinion* of a medical professional." *Id.* (emphasis added). Based upon this language, the lower tribunals required a medical determination to be well-reasoned and well-documented.

The language at issue from *Kirk* is dicta and therefore not precedentially binding. *See Arch of Ky.*, 556 F.3d at 481. More importantly, read in the context of this court's analysis, the use of "reasoned opinion" was not meant to create additional requirements for triggering the § 932(f) clock. Our *Kirk* decision simply reiterates that it is not enough for a claimant to know of his disability; rather, he must receive a diagnosis from a medical professional. *Kirk* does not require an ALJ to determine whether the medical determination is well-reasoned and well-documented, and the tribunals below erred in reading the decision to impose such requirements.

Brigance next argues that the disposition of his state claim bears on the timeliness of the instant federal claim, relying primarily on *Dukes*, where this court held that "if a miner's claim is ultimately rejected on the basis that he does not have the disease, this finding necessarily renders any prior medical opinion to the contrary invalid, and the miner is handed a clean slate for statute of limitation purposes." *Dukes*, 48 F. App'x at 146. Brigance suggests that because he did not receive lifetime benefits from the State of Kentucky, the medical determination of total disability due to pneumoconiosis constitutes a misdiagnosis for purposes of § 932(f) or, at minimum, demonstrates that the diagnosis was not reasoned.

The first problem with this argument is that *Dukes* involved the previous rejection of a claim for benefits under the BLBA. Under *Dukes*, if it is determined that a claimant does not meet the criteria for an award of benefits under the BLBA, then the claimant is handed a clean slate for purpose of the BLBA's statute of limitations. This makes sense because the miner in such a situation did not sit on his rights under the BLBA but instead acted upon them prematurely, for which he should not be penalized. In this case, however, Brigance *did* sit on his rights under the BLBA. Although he

promptly sought and received benefits from the State of Kentucky, he waited approximately seven years before filing his federal BLBA claim. The misdiagnosis rule applies only "if a miner's claim is ultimately rejected *on the basis that he does not have the disease*." *Id.* at 146 (emphasis added). Here, the record does not reveal the reason for the termination of the Kentucky benefits. And, unlike in *Dukes*, Brigance's prior claim was *not* rejected; the state tribunal awarded him benefits for eight years. Brigance's argument improperly presumes that Kentucky awards lifetime benefits for total disability due to pneumoconiosis. With regard to whether the diagnosis was well-reasoned, as explained above, neither the statute nor the regulation imposes such a requirement.

As with all BLBA claims, there is a rebuttable presumption of timeliness, and the burden falls on the employer to prove that the claim was filed outside the limitations period. 20 C.F.R. § 725.308(c); *Dukes*, 48 F. App'x at 143. In this case, Brigance admitted that a medical determination of total disability due to pneumoconiosis was communicated to him approximately seven years before filing the instant claim. The question, then, is whether Brigance's admission satisfies Peabody's rebuttal burden. We hold that it does. The statute of limitations does not limit the type of rebuttal evidence that is admissible, *see* 20 C.F.R. § 725.308(c), and the ALJ was not "bound by common law or statutory rules of evidence," 20 C.F.R. § 725.455(b). Because the evidence establishes that Brigance's claim was filed outside the limitations period, Peabody has met its burden.

### III.

The lower tribunals erred by imposing requirements for triggering the limitations period that are not supported by the text of § 932(f) or its implementing regulations. Accordingly, we reverse.