**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3976
_____

EIGHTY FOUR MINING COMPANY,
Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF
LABOR;
CHARLES E. MORRIS,
Respondents
_____

On Petition for Review of a
Decision of the United States Department of Labor
Benefits Review Board
(BRB No. 13-0518 BLA)
_____

Argued September 9, 2015
_____

Before: VANASKIE, NYGAARD and RENDELL,
*Circuit Judges*

(Opinion Filed:  February 9, 2016)

Norman A. Coliane, Esq.    [ARGUED]
Paul E. Sutter, Esq.
Thompson, Calkins & Sutter
850 Ridge Avenue
Suite 300
Pittsburgh, PA 15212
        *Counsel for Petitioner, Eighty Four Mining Company*

Heath M. Long, Esq.          [ARGUED]
Pawlowski, Bilonick & Long
603 North Julian Street
P.O. Box 658
Ebensburg, PA 15931
        *Counsel for Respondent, Charles E. Morris*

Helen H. Cox, Esq.            [ARGUED]
Gary K. Stearman, Esq.
United States Department of Labor
Office of the Solicitor
Suite N-2119
200 Constitution Avenue, N.W.
Washington, DC 20210
        *Counsel for Respondent, Director, Office of Workers'
Compensation Programs*

_____

OPINION
_____

VANASKIE, *Circuit Judge*.

Eighty Four Mining Company petitions this Court to review the United States Department of Labor Benefits Review Board's decision affirming an award of disability benefits to Charles Morris under the Black Lung Benefits Act (BLBA), 30 U.S.C. §§ 901–944. At issue is whether a state workers' compensation board's denial of pneumoconiosis benefits due to the repudiation of the claimant's black lung diagnosis resets the BLBA three-year statute of limitations period. Eighty Four Mining argues that it does not and that the Administrative Law Judge and the Benefits Review Board erred as a matter of law by granting benefits to Morris. We disagree. Accordingly, we will deny Eighty Four Mining's petition for review.

## I.

The relevant facts are not in dispute. Morris worked as a coal miner for nearly thirty-five years, nineteen of which were spent working underground. His last position involved heavy labor, and Morris's breathing difficulties eventually caused him to leave work. In 2006, Dr. Robert Cohen examined Morris and diagnosed him with pneumoconiosis (black lung disease). This diagnosis formed the basis of Morris's state workers' compensation claim for occupational disease benefits. Eighty Four Mining's physician, Dr. Gregory Fino, also examined Morris, but he determined that Morris's breathing difficulties were caused by smoking. In this regard, Dr. Fino found that there was no radiographic evidence of pneumoconiosis, but there was evidence of emphysema, a condition caused by prolonged cigarette

3

smoking.[1]  In a decision dated March 31, 2008, a state Workers' Compensation Judge concluded that Dr. Fino's opinion was more credible than Dr. Cohen's and that Morris "did not sustain an injury . . . in the nature of coal workers' pneumoconiosis or any other pulmonary injury." (App. 139.) Accordingly, Morris's claim for workers' compensation based upon pneumoconiosis was denied.  Morris did not appeal that decision to the Pennsylvania Workers' Compensation Appeal Board.

Morris's breathing problems subsequently worsened and a doctor put him on oxygen nearly full-time.  On January 6, 2011, Morris filed a claim for BLBA benefits.  He did not rely upon the 2006 report of Dr. Cohen that had been discredited in the state workers' compensation proceedings. Nor did he rely upon radiographic proof of pneumoconiosis. Instead, he relied upon a 2011 arterial blood gas study as well as pulmonary function testing that supported a finding of black lung disease. Eighty Four Mining opposed the application for benefits, contesting that it was barred by the statute of limitations because it was not filed within three years of receipt of Dr. Cohen's 2006 report.. Alternatively, it renewed the argument it had advanced in the state workers' compensation proceedings that Morris's pulmonary impairment was attributable to cigarette smoking and not due to coal dust exposure.

On July 9, 2013, an Administrative Law Judge ("ALJ") granted benefits under the BLBA.  The ALJ rejected the challenge to the timeliness of Morris's BLBA claim on

[1] Morris had been a heavy cigarette smoker, smoking a pack and a half of cigarettes per day for approximately 40 years.

4

the basis of our decision in *Helen Mining Co. v. Director, Office of Workers' Compensation Programs*, 650 F.3d 248 (3d Cir. 2011) [hereinafter *Obush*]. In *Obush*, we held that a denial of federal black lung benefits due to the repudiation of the claimant's pneumoconiosis diagnosis renders that diagnosis a "misdiagnosis" and resets the three-year statute of limitations for subsequent claims. *Id.* at 253-54. Under *Obush*, the ALJ determined that the state workers' compensation board's denial of Morris's claim rendered Dr. Cohen's 2006 diagnosis a "misdiagnosis" that did not trigger the statute of limitations under the BLBA. As to the merits of the claim, the ALJ determined that Morris sufficiently established the existence of pneumoconiosis through medical evidence obtained after 2010. The burden then shifted to Eighty Four Mining to rebut a presumption that Morris was totally disabled due to pneumoconiosis, either by showing that Morris does not have pneumoconiosis or that his breathing difficulties "did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4)(B). The ALJ concluded that Eighty Four Mining failed to adequately explain why Morris's years of coal dust exposure were not a substantial cause of his pulmonary impairment. Accordingly, the ALJ found that Morris was entitled to an award of BLBA benefits.

Eighty Four Mining appealed to the Benefits Review Board. On July 25, 2014, the Board affirmed the award of benefits to Morris, but it did so based on a theory of judicial estoppel.[2] The Board determined that because Eighty Four

---

[2] Administrative Appeals Judge Roy Smith dissented from the Board's decision, stating that he would have denied benefits because Morris's claim was untimely and that it was

Mining had previously argued that Morris's 2006 pneumoconiosis diagnosis was incorrect, it was inconsistent for Eighty Four Mining to rely now on that diagnosis as triggering the federal statute of limitations.. Because judicial estoppel precluded Eighty Four Mining's timeliness argument, the Board held that Morris's claim was timely. The Board also concluded that the ALJ correctly rejected the opinions of Eighty Four Mining's physicians that Morris's pulmonary impairment was attributable only to smoking. Accordingly, the Board affirmed the benefits award. Eighty Four Mining timely petitioned this Court for review of the Board's decision, challenging only the ruling that Morris's BLBA claim is timely.

## II.

We have jurisdiction over final orders from the Benefits Review Board under 33 U.S.C. § 921(c), as incorporated by 30 U.S.C. § 932(a). *Obush*, 650 F.3d at 251 n.4 (quoting *Labelle Processing Co. v. Swarrow*, 72 F.3d 308, 310 (3d Cir. 1995)). We exercise plenary review over questions of law. *Id.* (citing *Swarrow*, 72 F.3d at 313).

## III.

Congress enacted the BLBA to "provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis." 30 U.S.C. § 901(a). Under the BLBA, "'pneumoconiosis' means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). The

inappropriate to rely on judicial estoppel or *Obush* to determine otherwise.

6

legislation and implementing regulations explicitly acknowledge that pneumoconiosis is both a latent and a progressive disease. *See Consolidation Coal Co. v. Williams*, 453 F.3d 609, 616 (4th Cir. 2006) (citing 20 C.F.R. § 718.201(c)). In this respect, the legislation does not "bar claimants from filing claims *seriatim*, and the regulations recognize that many will." *Id.* (quoting *Lisa Lee Mines v. Dir., Office of Workers' Comp. Programs*, 86 F.3d 1358, 1362 (4th Cir. 1996)).

While allowing for serial claims in light of the progressive nature of the disease, the legislation does impose a limitations period for filing a claim. To maintain a timely BLBA claim, a miner must file a claim within three years of receiving a "medical determination" of pneumoconiosis. *See* 30 U.S.C. § 932(f). This "medical determination" must be "communicated to the miner" before the statute of limitations will begin to run. *See* 20 C.F.R. § 725.308(a). Neither the legislation nor the implementing regulations, however, define the term "medical determination." *See Arch of Ky., Inc. v. Dir., Office of Workers' Comp. Programs*, 556 F.3d 472, 481 (6th Cir. 2009). The question that arises is whether a diagnosis of pneumoconiosis that is rejected in an adjudicated proceeding nonetheless constitutes a "medical determination" that triggers the statute of limitations for bringing a claim for BLBA benefits.

In *Obush*, we answered that question in the negative, holding that the denial of an initial BLBA claim renders a prior pneumoconiosis diagnosis a "misdiagnosis" that will "reset the limitations clock as to subsequent claims." 650 F.3d at 253. Specifically, we concluded as a matter of law that a medical diagnosis of pneumoconiosis rejected by an ALJ in a BLBA proceeding "cannot be a 'medical

7

determination' of pneumoconiosis, as set out in section 932." *Id.* We reasoned that res judicata required us to accept a prior ALJ's denial of black lung benefits as a determination that the claimant's pneumoconiosis diagnosis was a "misdiagnosis." *Id.* at 252 (discussing *Swarrow*, 72 F.3d at 314). In so doing, we emphasized that "courts have repeatedly recognized that the remedial nature of the statute requires a liberal construction of the Black Lung entitlement program to ensure widespread benefits to miners and their dependents." *Id.* (quoting *Keating v. Dir., Office of Workers' Comp. Programs*, 71 F.3d 1118, 1122 (3d Cir. 1995)); *see also Pavesi v. Dir., Office of Workers' Comp. Programs*, 758 F.2d 956, 965 (3d Cir. 1985) ("[T]he Act must be applied in a manner which assures compensation to every miner who suffers from any of the several lung impairments covered by the Black Lung Benefits Act."). We also explained that the progressive nature of pneumoconiosis favors "reading the statute of limitations in an expansive manner to ensure that any miner . . . afflicted with the disease, including its progressive form, is given every opportunity to prove he is entitled to benefits." *See Obush*, 650 F.3d at 253. Lastly, we opined that "a restrictive interpretation of the statute of limitations . . . would be in tension with the regulation that enables miners to file subsequent claims." *Id.* "The very fact that successive claims are permitted—on evidence of material changes to the health of a miner—makes an interpretation of the statute of limitations that effectively precludes such claims untenable." *Id.*

Eighty Four Mining argues that *Obush* does not control the present case because *Obush* involved a subsequent federal claim after the initial diagnosis was repudiated in a federal proceeding, whereas the present case involves an

8

initial federal claim after the diagnosis of pneumoconiosis was repudiated by a workers' compensation judge in a state proceeding. This argument seizes upon *Obush*'s discussion of res judicata and ignores our statute of limitations analysis, which focuses on what constitutes a "medical determination" of pneumoconiosis. We necessarily held in *Obush* that a rejected diagnosis is not a "medical determination." Thus, under *Obush*, a denial of BLBA benefits as a result of an adjudicator's repudiation of the pneumoconiosis diagnosis resets the statute of limitations for subsequent claims, which begins to run again from a later diagnosis.

The opinion of our dissenting colleague also overplays the role of res judicata in *Obush*. The central holding of *Obush* is that a misdiagnosis does not start the limitations period—or, to put it another way, the statute of limitations resets upon discovery that an earlier diagnosis was a misdiagnosis, and the limitations period does not start again until a later diagnosis has been made. Although the principles of res judicata were applied to hold that the rejection of the original diagnosis was final, the ultimate holding that the original diagnosis was not a "medical determination" for purposes of triggering the statute of limitations did not spring from the conclusive effect of the ALJ's decision in the first proceeding. Rather, *Obush* relied upon (a) the fundamental understanding that "the remedial nature of the statute requires a liberal construction of the Black Lung entitlement program to ensure widespread benefits to miners and their dependents," *see id.* at 252 (quoting *Keating*, 71 F.3d at 1122); (b) the recognition that "'pneumoconiosis' is . . . a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure," *see id.* at 253 (quoting 20 C.F.R. § 718.201); and

9

(c) the fact that successive claims are permitted – "mak[ing] an interpretation of the statute of limitations that effectively precludes such claims untenable." *See id.* As the Sixth Circuit Court of Appeals put it:

> The statute of limitations exists to promote the quick filing of worthy claims. It does not exist as a trap for the unwary or unsophisticated miner. Given the recognized 'latent and progressive' nature of the disease, 20 C.F.R. § 718.201(c), a restrictive interpretation of 'medical diagnosis' is unwarranted because it would, in effect, penalize a miner who sought a consultation too soon and received a determination from a physician who decided to err on the side of aggressive diagnosis. Holding the miner responsible for a *genuine* misdiagnosis unjustly holds him responsible for the principled medical judgment of a doctor, presumably far more skilled and educated than the miner.

*Arch of Ky.*, 556 F.3d at 482 (emphasis in original) (quotation marks and citation omitted).

The question here is how to apply the central holding in *Obush* that a misdiagnosis does not constitute a "medical

10

determination" sufficient to trigger the statute of limitations—that is, we must determine whether there has been a misdiagnosis that resets that statute of limitations. The core concept behind the holding that a misdiagnosis resets the statute of limitations is that a miner presumably cannot self-diagnose black lung disease—he must instead rely upon the expertise of those "presumably far more skilled and educated than the miner." *See id.* (quoting *Peabody Coal Co. v. Dir., Office of Workers' Comp. Programs*, 48 F. App'x 140, 146 (6th Cir. 2002)). When a state adjudicator repudiates a diagnosis of black lung disease, a miner cannot himself determine the correctness of that conclusion. To hold that the state adjudicator's determination does not reset the statute of limitations would be to hold the miner responsible for determining not just whether his doctor made a correct diagnosis, but for determining whether the state adjudicator correctly determined that that diagnosis was incorrect. This "trap for the unwary or unsophisticated miner" is precisely the reason why a diagnosis repudiated in a contested adjudication does not trigger the statute of limitations. *See id.*

Here, Morris's state workers' compensation claim was denied because the adjudicator repudiated his doctor's diagnosis of pneumoconiosis. Indeed, the state Workers' Compensation Judge specifically concluded that Morris "did not sustain an injury . . . in the nature of coal workers' pneumoconiosis or any other pulmonary injury." (App. 139.) The rejection of Dr. Cohen's diagnosis is indistinguishable from the denial of the initial black lung benefits claim in *Obush*.

Thus, we hold that the rejection of a claim in which the adjudicator repudiates a medical determination of pneumoconiosis means that a subsequent claim filed within

11

three years of receipt of a new medical determination establishing the existence of pneumoconiosis will not be barred as untimely, regardless of whether the first claim was filed under a state workers' compensation law or under the BLBA.[3]  Our dissenting colleague is correct in pointing out that our decision today rests primarily on the liberal interpretation to be accorded the BLBA.  But so too did *Obush* rely upon that fundamental principle in holding that a "medical determination" of pneumoconiosis is not a "medical determination" for purposes of the statute of limitations when it is repudiated in an adjudicated BLBA proceeding.  To hold otherwise in this case would mean that Morris's second claim would be timely if he had initially unsuccessfully sought BLBA benefits but is untimely because he first elected to pursue state workers' compensation benefits.  Such a difference in result is untenable.  Indeed, given the latent and progressive nature of pneumoconiosis, an early diagnosis of the disease will often be deemed a misdiagnosis.  *See* 20 C.F.R. § 718.201(c) (recognizing pneumoconiosis "as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure.").  As we reasoned in *Obush*, this consideration supports "reading the

---

[3] Because we are not relying on res judicata for our decision today, we need not address the state workers' compensation board's process and standards.  What matters is that the diagnosis of pneumoconiosis was repudiated, as our holding is merely that a workers' compensation judge's repudiation of a diagnosis of pneumoconiosis will reset the statute of limitations.  For this reason, our dissenting colleague's fear that a ruling in favor of a miner in a state workers' compensation proceeding would mandate a finding in favor of that miner in a BLBA proceeding is unfounded.

statute of limitations in an expansive manner to ensure that any miner who has been afflicted with the disease, including its progressive form, is given every opportunity to prove he is entitled to benefits." *See* 650 F.3d at 253.

In light of these considerations, it is immaterial that Morris's first claim was filed under a state workers' compensation law. Rather, what matters is that Morris's initial claim was denied on the basis that he did not have pneumoconiosis. *See Peabody Coal Co. v. Dir., Office of Workers' Comp. Programs*, 718 F.3d 590, 595 (6th Cir. 2013) [hereinafter *Brigance*] ("The misdiagnosis rule applies only 'if a miner's claim is ultimately rejected *on the basis that he does not have the disease*.'"). As a result, when Morris's condition worsened and he filed a BLBA claim within three years of receiving a new medical determination of pneumoconiosis, his BLBA claim was timely. Thus, we will affirm the Board's award of benefits to Morris and deny Eighty Four Mining's petition for review.[4]

---

[4] As noted above, the Board did not rely upon *Obush*, but instead applied judicial estoppel to find that Morris's claim was timely. We reject the Board's judicial estoppel rationale. For judicial estoppel to apply, a litigant must have advanced irreconcilably inconsistent positions. It is not irreconcilably inconsistent to argue both that a diagnosis was incorrect and that the diagnosis nevertheless starts the statute of limitations clock. *Cf. Brigance*, 718 F.3d at 594 ("The limitations period begins to run when a medical determination of total disability due to pneumoconiosis is communicated to the miner. Whether the diagnosis is well-reasoned or otherwise accurate (whether the miner is *in fact* totally

**IV.**

For the foregoing reasons, we will deny the petition for review and affirm the Department of Labor Benefits Review Board's Decision and Order of July 25, 2014.

---

disabled due to pneumoconiosis) is irrelevant for purposes of the statute of limitations.").

*Eighty Four Mining v. Director, OWCP, No. 14-3976.*
*Nygaard, J., Dissenting.*

I.

I respectfully dissent. The majority relies heavily on one aspect of the *Obush* opinion: the courts' long history of giving a liberal interpretation to the Black Lung Benefits Act (30 U.S.C. §§901-945) to fulfill the remedial nature of the law. As the one who wrote the *Obush* opinion for the Court, I obviously have no problem with this general approach to interpreting the statute. However, I part ways with the majority because it fails to account for the entire holding in *Obush*, and, because of that, it misapplies it here.

*Obush* does not support the majority's holding that a Pennsylvania Workers' Compensation Administrative Law Judge (ALJ) is competent to rule that a diagnosis of black lung disease is a misdiagnosis under the federal Black Lung Benefits Act. *Helen Mining v. Director OWCP (Obush),* 650 F.3d 248 (3d Cir. 2011). Moreover, I can find no statutory or legal basis to give such authority to a Pennsylvania Workers' Compensation ALJ.[1] To the contrary, although section 421 of

---

[1] The majority's reference to an opinion from the Court of Appeals for the Sixth Circuit is misplaced. *Peabody Coal Co. v. Director, Office of Wokers' Compensation Programs, U.S. Dept. of Labor, (Brigance)* 718 F.3d 590 (6th Cir. 2013). The court in *Peabody* granted the petition for review of the mining company, reversing the grant of benefits, because the miner sat on his federal rights while adjudicating his state claim. *Id.* at 595. Nothing in the court's holding can be construed as concluding that the state adjudication of a claim is dispositive

1

the Black Lung Benefits Act (codified at 30 U.S.C. § 931) requires miners to file state workers' compensation claims, the requirement applies only to miners in states where the Secretary of Labor has determined that it provides adequate coverage for disability or death due to pneumoconiosis. To date, the Secretary has determined that no state program meets such requirements. 20 C.F.R. Part 722. For these reasons, I must conclude that Charles Morris' claim for black lung benefits, filed almost five years after he received a diagnosis of black lung disease, is time barred. Accordingly, I would grant 84 Mining's Petition and instruct the Board of Review to reverse the decision of the federal Administrative Law Judge who granted benefits to Charles Morris.

## II.

A federal ALJ's decision on a miner's claim for benefits under the federal Black Lung Benefits Act—if made pursuant to 20 C.F.R. § 725.421(a) and § 725.451-464—is res judicata. 20 C.F.R. §479(a); *see also Labelle Processing Co. v. Swarrow*, 72 F.3d 308 (3d Cir. 1995).[2] Therefore, claimants are estopped from re-litigating any factual findings

---

for purposes of a federal claim. To the contrary, as I discuss *infra*, the court made clear that the communication of a diagnosis alone is sufficient to trigger the statute of limitations. *Id.* at 594.

[2] Of course, such a decision is subject to appeal to the Benefits Review Board (20 C.F.R. § 481), and following that, a judicial review by a federal Court of Appeals (20 C.F.R. § 482(a)).

2

or legal determinations made in the adjudication of the claim. *Swarrow*, 72 F.3d at 314. But, in cases where the ALJ discredits the underlying diagnosis and denies the claim for benefits under the Black Lung Benefits Act, this decision is tantamount to a ruling that the diagnosis supporting the claim is a misdiagnosis. *Obush*, 650 F.3d at 252. Such misdiagnoses are legally insufficient to trigger the statute of limitations for subsequent claims. *Id.* As a result, the limitations clock is reset and claimants are able to bring a subsequent claim, pursuant to 20 C.F.R. § 725.309(c), without running afoul of the three-year statute of limitations that applies to "any" claim. *Swarrow*, 72 F.3d at 314.[3]

At issue here is whether the denial of a claim for benefits under Pennsylvania's Workers' Compensation program is res judicata such that—except as provided in 20 C.F.R. §725.309—a claim filed under the Black Lung Benefits Act would be precluded. I frame the question in this manner because in *Obush* we said "because we are required to respect the factual findings and legal conclusions in earlier adjudicated claims, we must accept an ALJ's conclusion that a medical opinion offered in support of that claim is discredited." Obush, 650 F.3d at 252. Our reasoning was necessarily rooted in our precedent analyzing Congress' provision for subsequent claims. *Labelle Processing Co. v. Swarrow*, 72 F.3d 308 (3d Cir. 1995).

---

[3] Subsequent claims are regarded as such only if they are based on new evidence showing a material change in conditions. *Id.*; 30 U.S.C.A. § 932; *see also* 20 C.F.R. § 725.309(c).

In *Swarrow*, the mining company argued that a miner's subsequent claim was barred by the doctrine of res judicata because it was the same cause of action involving the same parties in which a final judgment had been made. *Id.* at 313. We determined that Congress' provision for a second claim did not violate res judicata because the second claim was not constituted merely of "more doctors" saying the same things and finding a "sympathetic ALJ." *Id.* Instead, the second claim was premised on "a material change in conditions" from the first claim that asserted new facts giving rise to a new claim. *Id.* In *Obush*, we had no difficulty in determining that the subsequent claim was a material change in conditions because both the first and second claims were ruled upon by an ALJ of the U.S. Department of Labor, who ruled in both cases pursuant to 20 C.F.R. § 725.451-464. Moreover, there was no question that the ALJ's decision to discredit the first diagnosis and deny that claim was made in accord with the regulations governing the evaluation of claims for black lung benefits (20 C.F.R §718, §725) and with the precedent of the Board of Review. Because of this, we had certainty that the second claim brought by Obush was, indeed, a new claim, premised on a material change in conditions from the first diagnosis. Here, however, we have no such assurance.

We will presume, for purposes of this analysis, that the 2008 Pennsylvania ALJ's decision at issue here was consistent with the regulations and precedents controlling the Pennsylvania Workers' Compensation program, but the record is devoid of any evidence to assess whether relevant Pennsylvania regulations and precedent are in any way compatible with those governing claims for benefits under the Black Lung Act. Although the ALJ admitted the state decision into the record, there is no evidence that the ALJ

4

engaged in any analysis of relevant Pennsylvania law or the decision itself. Therefore, we cannot say with any certainty that the claim before us is, indeed, a new claim based on new facts. The majority never addresses this lacuna in the record. It simply declares, by fiat, that the decision by the Pennsylvania Workers' Compensation ALJ is the same as a federal black lung ALJ's decision, rendering the underlying diagnosis a misdiagnosis. This assumption is particularly troubling in light of the Secretary of Labor's own recent assessment that no state workers' compensation program—Pennsylvania included—is comparable to the federal black lung program. 20 C.F.R. Part 722. However, even if such evidence were in the record, the majority would still have a fundamental problem that simply cannot be brushed aside by pointing to the remedial nature of the statute: I see no way that the state adjudication could be res judicata as to the claim for federal Black Lung Act benefits.

The Pennsylvania ALJ decision is not a final decision on the merits of "the same cause of action, involving the same parties or their privies" as to any claim for benefits under the Black Lung Act. *Swarrow*, 72 F.3d at 313. This is by design. Because these are distinct claims, a miner—based on the same black lung diagnosis—is able to file, both, a claim for Pennsylvania Workers' Compensation benefits and a claim for federal black lung benefits: proceeding with both even if one of them is ultimately denied.[4] Although a denial of a Pennsylvania Workers' Compensation claim might be

---

[4] The statute anticipates the circumstance of a miner receiving both workers' compensation benefits and black lung benefits, providing for an offset. 30 U.S.C. § 932(g).

5

relevant to a federal black lung claim that is based on the same diagnosis, the disposition of the Pennsylvania claim does not prevent or resolve the federal claim. *See Schegan v. Waste Mgmt & Processors, Inc.*, 18 BLR 1-41 (1994); *Clark v. Karst-Robbins Coal Co.,* 12 BLR 1-149 (1989)(en banc). [5]

Precisely because the denial of a claim for Pennsylvania benefits that is based on a black lung diagnosis does not prevent or resolve a contemporaneous claim for federal black lung benefits based on the same diagnosis, there is no way that the Pennsylvania ALJ's determination can serve as a conclusive ruling as to any other federal black lung claim that may be filed later. This is the logical consequence of our ruling in *Swarrow* and *Obush*. Therefore, I disagree with the majority. The decision of the Pennsylvania Workers' Compensation ALJ to deny Morris' claim for workers' compensation benefits is not tantamount to a ruling that the underlying diagnosis of black lung disease is a misdiagnosis.

The implications of my conclusion are clear and direct. "Any claim for benefits by a miner under this section shall be filed within three years after . . . a medical determination of total disability due to pneumoconiosis." 30 U.S.C.A. § 932;

---

[5] It is not a "trap" for unsophisticated miners to hold that claiming eligibility for benefits under a Pennsylvania Workers' Compensation program is fundamentally different, by definition, from claiming eligibility for benefits under the Black Lung Benefits Act. Indeed, this is precisely what the Board of Review's own precedent declares, a conclusion that is reaffirmed by the Secretary of Labor's continuous conclusion that the benefits are not synonymous.

6

*see also* 20 C.F.R. § 725.308. Therefore, any diagnosis of black lung that is "communicated to a miner or a person responsible for the care of the miner" (20 C.F.R. 725.308) triggers the statute of limitation for a claim of benefits to be filed under the Black Lung Benefits Act. *Peabody Coal Co. (Brigance)*, 718 F.3d at 594 ("Construing the text of the statute as written, we hold that when a diagnosis of total disability due to pneumoconiosis by a physician trained in internal and pulmonary medicine is communicated to the miner, a "medical determination" sufficient to trigger the running of the limitations period has been made. No more is required."). The statute makes no provision for a miner to file a distinct claim after the expiration of that statute of limitation unless the merits of a timely filed claim for benefits under the Black Lung Benefits Act have been conclusively, affirmatively ruled upon. *See* 20 C.F.R. § 725.309. The statute of limitation clock is reset only after such a federal claim has been denied, rendering the underlying diagnosis a misdiagnosis. *Obush*, 650 F.3d at 253.[6] Since the state ALJ's decision does not have any conclusive effect upon subsequent federal claims, and it is not tantamount to a ruling (for purposes of a federal claim) that the underlying diagnosis is a misdiagnosis, the state ALJ's decision does not reset the statute of limitations clock under the federal Black Lung Benefits Act for purposes of a subsequent federal black lung claim.

In this case, a diagnosis of black lung disease was communicated to Charles Morris in 2006. Because he did not

---

[6] See *supra* discussion of section 421 of the Black Lung Benefits Act.

7

file any federal claim under the Black Lung Benefits Claims Act within the following three-year window, he is now time barred from raising any other claim.

As I stated above, I have no issue with the general orientation of the courts to interpret the statute liberally in order to give effect to the statute's remedial nature. However, we have an obligation to make such interpretations in a manner that respects the structure provided by Congress and the United States Department of Labor. In *Obush*, our liberal interpretation of the statute served not only to extend remediation to Obush, but also to preserve the claim structure established by Congress and the Secretary of Labor. We noted that a strict interpretation of the statute of limitations of the Black Lung Benefits Act would have eviscerated the statute's provision for subsequent claims, since any claim would have to have been filed within three years of the initial diagnosis. *Id.*

In this case, the majority's interpretation of *Obush* would actually impair the claim structure established by statute and regulation, and potentially render meaningless years of precedent established by the Review Board on the determination of disability under the Act. This is so because, if the majority's interpretation is taken to its logical conclusion, a Pennsylvania Workers' Compensation ALJ decision to award benefits would also have conclusive effect, mandating an award of black lung benefits regardless of the federal requirements set out at law. The majority's over-reliance on the remedial nature of the statute in this case produces a result that is not only unsupported by the statute, by our precedent, or by the record of this case; it is a holding that could potentially unravel the statutory and regulatory

8

scheme for black lung claims. Therefore, as I stated above, I must disagree with the majority and conclude that a decision of a state workers' compensation ALJ cannot be sufficient to reset the statute of limitation for a federal black lung claim.

It is clear that the Benefits Review Board also had some issue with the ALJ's reasoning, because it chose to uphold the award of benefits on alternative grounds. (App. at A11). It did not state its reasons for doing so, but it is fair to assume that the Board was aware of the conflict the ALJ's interpretation of *Obush* created with its own precedent in *Schegan* and *Clark v. Karst-Robbins Coal Co.*, which explicitly provides that state findings are not binding upon these federal proceedings. Beyond that, however, I will not speculate on why the Board took a different path to affirm the award of benefits. Nonetheless, consistent with the conclusion of the majority,[7] I, too, disagree with the Board's alternative reasoning that grounded its denial of 84 Mining's appeal on the basis of judicial estoppel.

III.

The Board ruled that 84 Mining was estopped from relying upon the 2006 black lung diagnosis to argue that Morris was time barred here. The rationale for their decision was that, in the Pennsylvania claim, 84 Mining argued the 2006 diagnosis of totally disabling pneumoconiosis was wrong, and that it is now inconsistent for it to assert "that this same report . . . which employer previously claimed, and established, was incorrect, supports a claim for work-related injury and should have been acted upon my claimant." (App.

---

[7] *See supra,* majority opinion footnote 4.

9

at A11).  84 Mining makes no such assertion.  Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *MD Mall Associates, LLC v. CSX Transp., Inc.,* 715 F.3d 479, 487 (3d Cir. 2013), as amended (May 30, 2013) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001).  84 Mining claimed in the Pennsylvania case what it claims now:  that the 2006 diagnosis is incorrect.  84 Mining is not making an argument that contradicts an earlier position.  Rather, it argues precisely the same point that I raise above:  a Pennsylvania Workers' Compensation ALJ is not competent to rule, for purposes of the Black Lung Benefits Act, that the 2006 diagnosis is a misdiagnosis.  Such a determination is only within the competence of those authorized by the Black Lung Benefits Act.  It was up to Morris to obtain such a ruling and he did not do so.  There is no inconsistency here.

Finally, I disagree with the Review Board that a miscarriage of justice was avoided by the grant of benefits here. (App. at A11).  After Morris received the denial of his Pennsylvania Workers' Compensation claim in 2008, he still had roughly one year left before the federal statute of limitation expired on his black lung claim.  I sympathize with the sentiment, alleged by Morris in his briefs, that—essentially—it would have been a waste of time to pursue a second claim based on a diagnosis that already had been discredited by a Pennsylvania adjudication.  However, it is undeniable that the federal statute and regulations gave Morris a second opportunity for relief after Pennsylvania denied his claim.  It is certainly unfortunate, but hardly a miscarriage of justice, that Morris chose to sit on his rights and refrain from filing a claim for federal black lung benefits.

10

## IV.

For all of these reasons, I respectfully dissent from the majority. I would conclude that Morris' claim is time barred. Accordingly, I would have granted the Petition for Review and instructed the Review Board to reverse the grant of benefits ordered by the Administrative Law Judge.